Haile vs. Hill, et al.

## THOMAS HAILE vs. ROBERT J. HILL, ET AL.

1. Plaintiffs were entitled, under the will of their father, who died in the State of Louisiana, to certain slaves after the death of their mother who owned a life estate in them. Their mother owning a life estate instituted suit against defendant to recover the possession of the slaves and joined the names of the plaintiffs with her's in the suit. Judgment was rendered for the defendant. Their mother being dead, plaintiffs now sue in detinue to recover the slaves. Held that the judgment thus rendered against plaintiffs is no bar to their right to recover; that such judgment only concluded those who had a right to sue.

2. A witness who is interested in a suit is competent to testify when called upon by a party claiming against his interest.

3. A party is not bound to read the whole of a record offered by him in evidence, but only such parts as he may deem necessary to prove the facts which he desires to establish; the opposite party has a right to have the balance read or such parts as he may deem material to his side of the question.

4. The probate of a will in another State is to be regarded as a "judicial proceeding" to the record of which "full faith and credit" is to be given when certified conformably to the act of congress of 1790.

5. In an action of detinue to recover a slave, if the slave dies before judgment, the measure of damages is the use and hire of the slave up to the time of his death.

Haile vs. Hill, et al.

## APPEAL from Madison circuit court.

Scott & Fitzgerald, for appellant.

1. The circuit court erred in sustaining the demurrer of the plaintiffs below to the fifth plea of the defendant below. 2 Chit. Pl. 438; 1 Saunders 92 and note 3; 1 Mo. Rep. (old edition) McKnight vs. Taylor, 202; 1 Starkie Ev. 221, 223, also 222, 223 and notes, also 219 and notes.

2. The circuit court erred in permitting to be read to the jury as evidence a paper purporting to be the will of Ferguson Haile, together with the papers accompanying it. Story's Confl. Laws, page 391, sec. 465, also page 394, sec. 468, also page 215, sec. 260, also 527, sec. 636; 2 Harris and John. 191, 195; 3 Gill and John. 234, 242; Civil Code of 1825, page 504 art. 1567; also page 606, art. 1577, also p. 506, art. 1580-81, also page 510, art. 1588; 5 Mo. Rep. 403, Haile vs. Palmer and wife; 1 Stark. Ev. 184, note 3; 8 Mo. Rep. 421, Bright et al. vs. White; Civil Code, page 478, arts. 1480, 1481, 1482, also pages 516 and 518, arts. from 1609 to 1616; Story's Con. Laws, page 396-7, sec. 471; Butler's N. P. 298.

3. The circuit court erred in permitting to be read in evidence to the jury two books purporting to be general digests of the acts of the legislature of Louisiana, printed in 1828, also two other books purporting to be the acts of the first and second sessions of the first legislature of said State, printed in 1846 and '47, also a book purporting to be the "Civil Code" of said State, printed in 1838, also a paper purporting to be an act headed "Civil Code," approved March 31st, 1808. 7 Mo Rep. 22, Hite vs. Linhart; 2 Stark. Evid. 331; note 2; 1 Stark. Evid. 248, 249; 2 Stark. Ev. 331; title "Foreign Laws"; 1 Peter's Rep. 229, Consequa vs. Willings; 1 Johnson Rep. 385, Kinney vs. Clarkson; Story's Con. Laws, 224, sec. 269; Rev. Code of 1845, page 466-7; 8 Mo. Rep. 421, 426, Bright et al. vs. White; Story's Con. Laws, page 201, sec. 242; also page 203, sec. 243; also page 219, sec. 263; also page 232, sec. 278, also page 299, sec. 362 and forward to sec. 557; 9 Mo. Rep. 56, Broadhead vs. Noyes; also 157, Dorsey vs. Hardesty.

4. The circuit court erred in permitting to be read to the jury as evidence a paper puporting to be the deposition of Elizabeth Haile, and in refusing to permit the defendant below to prove her to be interested in the suit. 1 Dallas Rep. 273, 275; Starkie Ev. 102, 103, 104 and notes.

5. The circuit court erred in permitting to be read to the jury as evidence of the confessions of Thomas Haile, a paper purporting to be a transcript of a record on petition had in the State of Louisiana, and in refusing to permit the defendant below to make and file his affidavit that he had not instituted said suit or caused it to be instituted. Peak's ev. 56; Salk Rep. 154; Buller's N. P. 236-7; 1 Starkie Ev. 285-6 and note; 7 Tenn. Rep. 3; Roscoe's Ev. 105; 10 Mo Rep. 621, Hall vs. Guthrie; Peak's Ev. 54; Buller's N. P. 235; 6 Mo. Rep. 435, Keith vs. Wilson; 1 Mo. Rep. (old edition) 744 Bank of Mo. vs. Scott; 2 Starkie Ev. 42 and notes; 4 Mo. Rep. 82, Cozens vs. Gillespie; Roscoe's Ev. 57; 1 B. & A. 182, Hennel vs. Lyon.

6. The circuit erred in permitting to be read in evidence to the jury so much of a certain transcript of a record and proceedings of a suit heretofore determined, in which Martin and Lucy Palmer were plaintiffs, and Thomas Haile was defendant, as related to the names of the parties, the title thereof, and how it had terminated. 1 Starkie Ev. 214; 2 Starkie Ev. 214, and cases cited; Gilbert's Law Ev. 31.

7. The circuit court erred in refusing to permit the defendant below to read in evidence to the jury the record last referred to, and after the plaintiffs below had read portions of the same, the said court erred in refusing to permit the said defendant to read the rest and residue of the same. 2 Mo. Rep. 54 Hempstead vs. Stone; 1 Stark. Ev. 222; 8 Mo. Rep. 120, Offilet vs. John (mulatto); 2 Stark. Ev. 707, 708, &c.; 1 Chitty's Plead. 472; 2 Story's Rep. 733;

---

Haile vs. Hill, et al.

---

1 Chitty's Plead. 222 ; 1 Mo. Rep. 341, Chamberlain vs. Smith ; Stark. on Ev. 214 and note n, also 215, also 222, 223 ; 5 Esp. Cases 59 ; Peak's Ev. 29 ; Buller N. P. 227, 228, 235 ; Peak's Ev. 34, 35 ; 1 Stark. on Ev. 188-9, note 2.

8. The circuit court erred in giving the seven instructions prayed for by the plaintiffs below, as preserved in the bill of exceptions.  As the instructions given by the court relate to and are mostly connected with the errors referred to, the court are referred to authorities already cited in this breif, also 1 Mo. Rep. 225.

9. The circuit court erred in refusing to give eleven of the twelve instructions prayed for by the defendant below.

## Cole, for appellant.

1. The court below erred in excluding the 5th plea of appellant.

2. That instructions 6 and 7 confess the fact, and decide that the will of Ferguson Haile did not disinherit Thomas Haile, appellant.  Taking this decision of the court to be true, and also as an admission of appellees, the appellees cannot recover in this action, having neither an exclusive right of property, nor a right to immediate possession in the property in suit.

3. The court below permitted the agreement of the parties to go in evidence to the jury on the part of appellant, but erred in instructing that evidence away.  If it was legal evidence it should have remained with the jury, if otherwise, it should have been withdrawn.  Under the instruction it was evidence and not evidence—an embarrassing affair for the jury, and a wrongful one for the appellant.

4. There were two grounds of legitimate defence to the plaintiff's action.  First, That appellant was an heir of Ferguson Haile by the laws of Louisiana to the slaves in controversy, and entitled to a share thereof with the other heirs.  The action of detinue could not be sustained under such a state of facts, and the plaintiff would have been non-suited.  The appellees have been non-suited.  The appellees have mistaken their remedy, if indeed they have rights.  Secondly, The deed of compromise entered into by appellant and appellees, before the commencement of this action, contains technically a contract, founded upon a valuable consideration, by which the appellant acquired an interest in these slaves, and at the same time acquired a right to retain the possession thereof until the agreement was complied with according to the true intent and meaning thereof.  This state of things pre-existing, precludes a recovery in this action.

5. Lucy Haile, widow, had an unfettered right under the will of her husband, to dispose of the estate as she pleased.  One mode of alienation known to the law is that by the judgment of a court of record.  The judgment of Thomas Haile against her for the property in suit, is as operative against her and those claiming in this suit, as if she had adopted any other mode of alienation, to wit: by sale, gift, grant, &c.

6. The agreement of the parties to the suit contains a clear and decisive admission of right in Thomas Haile to one-sixth part as heir, and also to payment for money advanced, services rendered, &c.  The office of the referees was not to ascertain rights, but to provide the way and means of compensation by money, slaves, &c., to Thomas Haile, out of the estate.

## Garland, Frissell & Johnson, for appellees.

The court did not err in admitting all the volumes of Louisiana law, offered by the plaintiffs.  By them the court must presume (as nothing appears to the contrary) that it was shown that the will of Ferguson Haile was properly proved and admitted to probate.  It is not for this or any other court to attack that will collaterally—having been admitted and established by the proper tribunal ; it must stand in full force and virtue as the will of Ferguson Haile, until annulled or reversed by the same or an appellate court.  See Gaines' case, 2 Howard, 619 :

" A court of equity will never put itself in the place of the arbitrators, and unless an award

has been actually made, a court of equity will not decree performance of the intention of the arbitrators." See Watson on arbitration and award, page 229, and authorities there cited—Milnes vs. Grey, 14 V. 406 et seq.; Blundell vs. Brittargh, 17 V. p. 241.

Judge BIRCH delivered the opinion of the court.

In the year 1831, Ferguson Haile died in the State of Louisiana, having previously made a will, whereby after reciting that he had given to his two children by a former marriage (naming them, and the plaintiff in error being one) all he was able or intended to, his remaining property is devised to his wife Lucy and her children, (by him) to be used and disposed of by her for their maintainance and education during her life, and to be equally divided amongst them at her death. The will was admitted to probate, and the widow administered on the estate, the controversy concerning which will be noticed hereafter. In the spring of 1832 the defendant below, who was one of the children of the first marriage, took certain negroes thus devised from the possession of his step-mother and her then husband, Martin Palmer, with whom she had recently intermarried, brought them to this State, and has assumed ever since to hold them as his own. Palmer and his wife followed the defendant to Missouri, and commenced an action of detinue against him for the negroes now again in suit ; the declaration reciting, and one of the counts confirming to each of the said relations, that Mrs. Palmer sued as well in her own right as that of trustee for her children, who. were plaintiffs below and appellees here. That suit was a long time on the docket of the circuit court, came to this court, was sent back, partially compromised, and appears to have been finally wound up upon the record by an entry of a general judgment against the plaintiff.

The first and most material question, therefore, is the one which is raised by the action of the circuit court, in sustaining the plaintiff's demurrer to the defendant's plea of former recovery ; and as that plea made profert of and was determinable alone by the terms of the will, as denoting the condition of the estate sued for, we have looked into it narrowly with a view to the solution of the question in issue, and find the estate to have been demised and limited substantially as stated in the preceding paragraph.

We are of opinion, therefore, that as the bequest to the present plaintiffs was but an estate in *remanentia,* to be enjoyed after the particular estate of their mother, they were at least not concluded by the fact that they were personated and joined in an action for her benefit, during her life, which resulted in the judgment which it is alleged was ren-

dered against them.   The circuit court, therefore, committed no error in sustaining the plaintiff's demurrer to the defendant's fifth plea.

In reaching the foregoing conclusion, we have thrown out of view, in considering the record upon which the plea was founded, all that has been alleged respecting the unfairness whereby a judgment of recovery, instead of a judgment of dismissal, was entered by the clerk.   If the parties who are plaintiffs in this suit, had been in condition to sue and conclude themselves in the previous suit, we apprehend their only remedy would have been against the attorney or the officer who committed the wrong.   The impolicy of permitting a record to be impugned, either in the manner suggested by the plaintiffs in reference to the judgment in the former suit, or by the defendant in reference to the one commenced by him in Louisiana, need only be reflected upon to be conceded.   There is a process whereby to correct such errors; but as it has been resorted to in reference to neither of the suits in question, we need but add that the proceedings which the records respectively exemplify, must stand together upon the same general principle, but with different effects.   The one from Louisiana being between parties who had a right to sue, must be regarded, to the extent it goes, as conclusive between them ; whilst the one in our own State in like manner concludes those who had the right to sue, but no others.   We find no error then in the decision of the circuit court, whereby the plaintiff in error was estopped from denying, even though under oath, in this action, the facts established against him by the record of the court in Louisiana ; though in the view we have taken respecting the question of evidence which have been raised by the counsel for the plaintiffs here, the admission or rejection of the record of the suit in question, would be of comparatively subordinate importance.

By the second section of our *present* "act concerning evidence." "the printed statute books of sister states, and the several territories of the United States, purporting to be printed by the authortty of such states or territories, shall be *evidence* of the legislative acts of such states or territories."   And by the sixth section of the same act, "the printed volumes purporting to contain the laws of a sister state or territory, shall be admitted as *prima facie* evidence of the statutes of such states and territories."

Regarding the "printed volumes" which were read by the plaintiffs, and objected to by the defendants in the court below, as at least answering the legislative requisition as to what "shall be admitted as *prima facie* evidence," and no attempt having been made to rebut the presumption thus authorized respecting their validity, we think the cir-

cuit court did right in permitting them to be read as evidence, (until better was adduced) of what the laws of that State was upon the questions arising in the cause compared with the convenience resulting from such a practice, (the motive doubtless which led to the legislative permission,) no corresponding hardship or injury need result from it; for even in the present case, which is probably as strong an one as can be imagined, if the defendant *really* supposed that the laws of Louisiana, as read from the printed books procured by the counsel for the plaintiff, were either misprinted or had been repealed, his affidavit to that effect might well have been entertained as a ground for a new trial. Unless something like this be done, the practice is deemed a safe and convenient one to permit such laws to be read, and a verdict founded upon them to stand.

Independent of the modification of one of the rules of evidence, intended by the 26th section of the 7th article of the "practice at law" act, we concur in the reasoning of the counsel for the appellees, respecting the deposition of Elizabeth Haile. She was the widow of the other son of the testator's first marriage, and her interest consequently, if presumed to have any, was against the party calling her. It does not indeed appear, by the manner in which the point is made upon the record, that the defendant even offered to prove that she had any other interest—the language simply being that he offered to prove "the interest of the witness." Had it been otherwise, however, we are not prepared to say, especially without knowing what she had sworn in her deposition, that we would review the discretion of the circuit court in permitting it to be read. Her testimony may have been cumulative merely, or otherwise ineffective to influence either the one way or the other the *final* finding of the jury; and to all this was superadded her own oath, as part of her deposition, that she had no interest in the cause.

In reference to the ninth assignment of errors, we think it was competent and proper for the plaintiffs to read such portions of the record of the suit of Palmer and wife against the defendant, as were deemed pertinent to the fact or facts they desired to establish, and it may have been the right of the defendant to have had the balance of it, or such other parts as were deemed material to his side of the question, read also to the jury. It is deemed sufficient to state, however, in reference to that question, (embraced in the 10th and 11th assignment of errors) that no such point was made or included in any of the reasons assigned for a new trial, and that it need not consequently, be further considered here. The 2d section of the 7th article of the "act to regulate

the practice at law," and the early, continuous and recent (Long vs. Story) exposition it has received from this court, renders a repetition of the reasoning unnecessary.

This, we believe, disposes of all the material questions in the case, except such as arise upon the instructions, or have relation to the weight of the testimony. The first instruction, given at the instance of the plaintiff, was in these words :

"1. That the will of Ferguson Haile, in evidence in this cause, having been admitted to probate under the laws of Louisiana, by its terms, vests in the plaintiffs after the death of Mrs. Palmer, the right to all the property of which he died seized, that had not been legally disposed of by the widow, under her power and duties under the will."

Casting out of view the question of the admissibility of the Louisiana books as evidence of the Louisiana laws, this instruction may have been well predicated upon the ground assumed by this court in the case of Bright et al. vs. White, (8 Mo. 421.) Although the cases are not deemed parallel in the respect assumed by the counsel for the plaintiff in error, (our statute respecting evidence having been since changed) the probate of a will was regarded in that case as a "judicial proceeding," to the record of which, "full faith and credit" was to be given, when certified as this is, conformably to the act of Congress of 1790.

No testimony appears to have been offered in the court below upon the question of fact, as to whether the ancestor of these parties had or had not advanced to the children of his first marriage a proper portion of his estate. Under our law, that would surely have been necessary to invalidate the recital in the will itself; so that in that respect the second instruction was well enough, conceding even that the validity of the will should be attacked in such a manner.

Waiving, therefore the further consideration of that proposition, it is deemed sufficient to remark in reference to the alleged laws of Louisiana, which are relied upon (amongst other things) to establish the disinherison of the plaintiff in error, that it no where appears in the record that the defendant offered any such laws in evidence, and that as we are not presumed judicially to know, so we are not authorized to judicially assume that any such laws were contained in the books offered in evidence by the plaintiff. On the contrary, such a fact must be in some manner apparent from the record, whereby this court must not only itself see, but it must likewise be apparent that the circuit court has seen, in evidence such foreign laws as are here relied upon to overturn its decisions. Unless this be done, the legal presumptions must be in favor of the regularity and legality of the judicial proceedings we may

Hail vs, Hill, et al.

be called upon to review. And this may be held to cover almost the entire ground of controversy respecting the probate of the will in Louisiana, and the action of the circuit court consequent upon it. In any view of the case, therefore, the second and sixth instructions are entitled to stand.

The 3rd, 4th and 5th instructions, given at the instance of the plaintiffs, so well and clearly comprehend and announce the law in respect to the agreement to arbitrate the matters in dispute in the former suit, as to need no comment or elucidation. They are as follows:

"3. That a guardian cannot, under our laws, dispose of the future or contingent interest of his ward, and the act of Franklin Murphy guardian of Ferguson Haile, Jr., in signing the agreement which affected his future rights to the negroes in controversy, having been done while Lucy Palmer was living, is void, confers no right upon Thomas Haile, and divests Ferguson Haile (the plaintiff) of no rights of property."

"4. That the agreement of November 27, 1844, on the face of it, and through all its parts, appears to have been an agreement to arbitrate certain matters in controversy, and having failed to be executed as such, it cannot be construed into a contract binding upon the parties independent of an award."

[The court might well have refused the jury this paper, but having permitted it to be read, at the instance of the defendant, he cannot be heard to complain that the jury were properly instructed respecting its legal effect.]

"5. That the right of possession of Thomas Haile, to any of the negroes under the agreement in evidence, is dependent upon their being valued by the referees named in the agreement, and as no valuation has been made by them, nor can be made, Haile cannot retain possession against the plaintiffs."

Whilst the last instruction of the court seems to us erroneous, it is proper to remark that it appears to have in its support not only the technical sanction of the pleadings, and the judgment contemplated by this action, but also the preponderance of previous adjudications, so far as we have been enabled to consult them. The reasoning and the right, however, seem to us the other way; and that a proper finding in such a case as this would be the special fact of the death of the slave, as a reason why no value was affixed by way of alternative judgment, leaving the use and hire, up to the period of the death, to constitute the measure of damages.

The clerk of this court will be directed, therefere in accordance with the conditional authority on file for that purpose, to enter, along with

the judgment of affirmance a remittitur of five hundred dollars, that being the value of the slave Charles, at the time of instituting the suit, as erroneously found by the jury, and for not having entered this remittitur in the court below, the defendants in error will of course be taxed with the costs of this appeal.

In reference to the rest of the case (the relevant and unambiguous instructions which were refused to the defendant being confessedly but the counterpart of those that were given for the plaintiffs,) no such error or irregularity in the record is perceived as to call for further correction; and judge RYLAND concurring in this opinion the judgment of the circuit court is consequently affirmed.

