ADÈLE VIDAL, wife of ADOLPH WILTZ, *v.* EMILE COMMAGÈRE et al.

An Act of the Legislature, authorizing the adoption of an orphan child, with the *proviso* that the adoption be executed by act signed before a Notary Public, within a fixed period after the passage of the law, must be interpreted as conferring on the adopted child all the rights of a legitimate child. An orphan so adopted will inherit the estate of those making the adoption, to the exclusion of all collateral heirs.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *G. Legardeur*, for plaintiff and appellant. *Grivot* and *Purvis & Dugué*, for defendants.

MERRICK, C. J. This controversy is between the nephews and nieces of the

deceased, and an adopted child, for the property of the succession of *Félicité*          <span>VIDAL<br>*v.*<br>COMMAGÈRE.</span>
*Blanche Power*, wife of *P. J. B. Vidal*.

It grows out of the second section of the Act of March 15, 1837, which is as
follows :

*Be it enacted, &c.;* " That *Pierre Jean Baptiste Vidal* and *Félicité Blanche Power*,
of the parish of Orleans, be authorized to adopt a young orphan child named
*Adèle*, aged about seven years, who has been brought up by them ; provided the
adoption be executed by act signed before a Notary Public in said parish of
Orleans, within six months after the passage of this law."

The whole question is one of interpretation. What rights did the Legislature
intend to confer upon the plaintiff, by authorizing *Vidal* and wife to adopt her ?
What was meant by adoption ? We are to suppose that the Legislature intended
to confer some substantial right by its action ; for it cannot be presumed that a
formal exertion of the sovereign power was made for a trivial purpose.

Now, if this formal act is to be construed to confer merely a right to take the
orphan into the family to reside, it gives it, as we think, a slight significance. It
was a right with which no one would likely interfere, even in the absence of any
action of the sovereign power.

The lawgiver has directed us to construe his words according to the most known
and usual signification, except when he uses words of art, which are to be inter-
preted according to their received meaning and acceptation with the learned in
the art to which they refer. C. C. 15, 16.

If we take the most known and usual signification of the words " to adopt," we
find them to mean " to take a stranger into one's family, as son and heir ; to take
one who is not a child and treat him as one, giving him a title to the privileges
and rights of a child." Webster's Dic., verbo Adopt.

If we refer to history, we find the word has a similar meaning. Thus by shield
and buckler Theodoric adopted the king of the Heruli ; thus Tiberius adopted
Germanicus ; and when Tiberius was himself adopted by Augustus, by adrogation
Germanicus became the grandson of Augustus.

Adoption was known to the Athenians and Spartans, as well as the Romans
and the ancient Germans, and was familiar to the writers of the new, if not the
old Testament. Thus it is a word come down to us from many sources and of
such general use, that there can be no doubt of its usual signification.

Considered as a word of art, it is unknown to the common law, but one very
familiar to the civilian. See Burrill's Law Dic., verbo Adoption.

Under the Roman law, the person adopted entered into the family, and came
under the power of the person adopting him. And the effect was such, that the
person adopted stood not only himself in relation of child to him adopting, but
his children became the grandchildren of such person. Dig., lib. 1, p. 7, l. 23, 27.
The French law also admitted of adoption, and the adopted succeeded to the inheri-
tance of the adopter. Code Napoleon, Art. 350. It was also known to the
Spanish law, and the person adopted succeeded as heir to him who adopted him.
See Tit. 16, 4th Partidas.

This law became the law of Louisiana, and remained unrepealed until the adop-
tion of the Code of 1808. Now, when in an enabling or permissive statute, the
Legislature has used a word so familiar in its ordinary acceptation, and so well
known in the sources of our law, does it become the judiciary to say that it has
not such meaning, because the lawgiver has not himself expressly defined the sense
in which he intended the word should be taken ? Can the court say that when he

VIDAL
v.
COMMAGÈRE.

used this comprehensive word, he did not intend it as ordinarily understood? that it only meant to place this helpless orphan under the protection of these friends (who had thus far nourished and protected her) until she should become twenty-one years of age or be married, and that then the tie should be severed? It is a well known rule of interpretation of statutes, in states governed by the common law, that when a common law term is used in a statute, it shall be understood in that sense in which it was understood at common law. 1 Ld. Raym. 371, *Ex parte Vincent.* 26 Alabama R., 145. If so, then words having a well known signification in the sources of our jurisprudence ought to be considered as used in that sense when embodied in a statute. As has already been remarked, the former laws of Louisiana authorized adoption, and the rights conferred by those laws are known to our courts and have been the subject of discussion before this tribunal. 4 L. R. 427, *Fusilier* v. *Massé.* The lawgiver ought not to be supposed ignorant of this state of things, or to use a term in a more restricted sense than it was formerly known to our laws; and it is a rule of interpretation, that laws on the same subject-matter may be considered, whether they be in force or repealed. *Church* v. *Crocker,* 3 Mass., 17, 21; *Thayer* v. *Dudley, Ib.* 296; *Holland* v. *Makepeace,* 8 Mass. 418; *Holdbrook* v. *Holdbrook,* 1 Pick. 248; *Mendon* v. *Worcester,* 10 Pick. 235; *State* v. *Baldwin,* 2 Baily, 541; *State* v. *Fields, Ib.* 554; *Coleman* v. *Davidson Academy,* Cooke, 258. See also 3 Zabriske R. 143, 180, and *Ruckmaboye* v. *Mottichund,* 32 Eng. Law and Equity, 84.

We conclude, therefore, that, as by the common acceptation of the word adoption, the relationship of parent and child with all the consequences of that relationship is understood, as such was the legal meaning of the word under the former laws of Louisiana, and as such is its acceptation among civilians and those conversant with the sources of our laws, we cannot say that the Legislature used the word in a more restrained sense; in a sense not understood in common parlance, not given in any dictionary, and not known in any system of laws. As by the former laws of Louisiana, the person adopted bore the relation of child to the person adopting, and inherited his estate, so we think the Legislature, by the solemn expression of its will, intended to confer the same right upon the plaintiff to the estate of those who were authorized to adopt her. Smith, in his Commentaries, says, sec. 467:

" The laws which are in favor of that which the public good, humanity, religion, the liberty of making contracts and testaments, and other such like motives, render favorable, *and those which are made in favor of any persons,* are to be interpreted in as large an extent as the favor of these motives, joined with equity, is able to give them, and they are not to be interpreted *strictly,* nor applied in such a manner as to be turned to the prejudice of those in whose favor they were made."

We do not think an argument unfavorable to the pretensions of the plaintiff can be drawn from the fact that in many other Acts the lawgiver has taken care to define the word adoption; for we are not advised that he has in any one of them used the term in a more restricted sense than that known to our former laws. And it may be inferred, that it was not the intention of the lawgiver to bestow upon plaintiff, by the use of the comprehensive word, adoption, any less rights than it had been in the habit of granting by other similar Acts.

The argument, that the statute must be strictly construed, because it is in derogation of the law in regard to inheritances, which law has been created and moulded by positive legislation, can have, we think, no great weight; for the

argument assumes, that the statute authorizing plaintiff's adoption only intended to grant *Vidal* and wife the control over the person of the plaintiff. Now, it might be assumed with equal propriety, that tutorship is regulated by general laws operating upon all persons of the same class, and that, therefore, the Legislature could not have intended, by the indefinite expression used, to give *Vidal* and wife control over the person of the plaintiff, and thus derogate from the laws on the subject of tutorship. Put these two arguments together, and they prove : 1st, that the Act of the Legislature did not intend to give the plaintiff any right as heir, because that would be in derogation of the law of inheritance ; and, 2d, that it did not create the reciprocal relations of protector and protected, and consequent control over the person of the minor, because that would be in derogation of the general laws as to tutorship ; and thus the statute is deprived of all meaning.

The parties who applied for this statute in 1837, understood it as conferring upon the plaintiff the rights of a legitimate child. This is evident from the notarial act which they executed in the form directed by the lawgiver, wherein they declared that they adopted " irrevocably now and forever the said orphan *Hélène*, to whom they gave the name of *Adèle Vidal*, and they desire and intend thenceforward she shall enjoy the same rights, advantages and prerogatives, as if she had been the issue of the marriage of the parties to the act, and their legitimate child."

And as these parties understood the law, so we doubt not it would have been unhesitatingly understood by almost every one whose mind had not been trained to the distinctions and subtleties of legal argumentation.

As the parties understood the Act, so we think the Legislature intended it to be construed.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that the said decree of the court, recognizing said defendants as heirs of said *Félicité Blanche Power*, be rescinded and annulled, and that said *Adèle Vidal*, wife of *Adolph Wiltz*, be recognized as the sole heir of said deceased, and be put in possession of all the property of said succession ; and that the defendants pay the costs of both courts.