68 482
96 559
68 482
100 35
68 482
101 291
68 482
113 130
113 346
114 132
114 202
68 482
118 575
68 482
122 299
124 371
68 482
131 18
68 482
135 403
136 212
68 482
143 54
144 250
68 482
148 564
148 578
68 482
152 496
68 482
161 407
68 482
173 1594

## REINDERS v. KOPPELMANN et al., Appellants.

1. **Devise**: LIFE ESTATE, NOT ENLARGED INTO A FEE BY POWER TO SELL. The will of a testator, after devising all his real and personal estate to his wife during her life, contained this provision: "The foregoing bequest is made under the express proviso that my said wife * * will carry on and continue my business with my co-partners; but I will that no part of my real estate, still less the whole of it, be sold or otherwise disposed of before the lapse of twenty-five years. * * After the decease of my said wife, the property then left shall be divided as follows," &c.; *Held*, that the power thus impliedly given to sell the real estate did not enlarge the wife's life interest to an estate in fee.

2. **Effect of Adoption on Descent.** On the death of an adopted child, his estate will go to his relations by blood, and not to those by adoption; and this, even, where the estate which so descends has been derived from the adoptive parent. The statute of adoption (Wag. St. p. 256), has not changed the general rules of descent, established in the general statutes on that subject.

3. **Heirs.** A testator devised a life estate in his property to his wife, and then declared that after her death a certain portion of it should go in remainder "to the nearest and lawful heirs" of his wife. *Held*, that the word *heirs*, as here used, meant those persons who should be her heirs at the time of her death and not those who should be her heirs apparent at the testator's death.

4. **Partition.** CONTINGENT ESTATES. A partition will not be refused because there is a contingent estate in the land, which may hereafter be vested in persons not yet *in esse*. The parties not *in esse* are represented by those who take subject to their rights, and the partition or sale is conclusive, so far as third persons or purchasers are concerned.

5. **Partition Sale Conclusive against Persons not in Esse:** CONSTITUTIONALITY OF STATUTE. The 4th section of the Partition Act (Wag. Stat. p. 967,) provides: "In case the share or quantity of interest of any of the parties * * be uncertain or contingent, or the ownership of the inheritance shall depend upon an executory devise, or the remainder shall be contingent, so that such parties cannot be named, the same shall be so stated in the petition." The 34th section (p. 971) provides that the sheriff's deed upon a sale in partition "shall be a bar against all persons interested in such premises who shall have been parties to the proceeding, and against all other persons claiming from such parties or either of them." *Held*, that these provisions do not, as against persons not *in esse* at the time a partition is made, dispense with the

constitutional right of every man that his property shall be taken only by due process of law, and are not, as against such persons, unconstitutional.

### Appeal from St. Louis Circuit Court.

This was a suit for the partition of certain real estate in the city of St. Louis. The petition showed that the land had belonged to one John H. Koppelmann, who had died leaving a widow, Anna, but no children of his own; that in his life-time he had adopted a child named Johanna, the daughter of Robert Jaeschke and Eliza, his wife; that at his death, Koppelmann had left the will which is set out in the opinion of the court, and which was duly probated; that Johanna died, before the commencement of the suit, intestate, unmarried and without issue; that her father, Jaeschke and his three sons survived her and were then living; that plaintiff, Reinders, had intermarried with the widow Koppelmann, and by certain conveyances set out in the petition had acquired all her interest in the land; that he had also acquired all the interest of Robert Jaeschke; that Mrs. Reinders (late Koppelmann) had never had any children of her own, and that she was still living. Certain persons were named as heirs at law of the testator, and certain others as the "ostensible heirs" of Mrs. Reinders, and these persons, together with the three brothers of Johanna, deceased, were made defendants.

The defendants demurred to the petition, for that it appeared that as to one-half of the fee of the lands described, there was a contingent remainder in favor of the persons who, upon the decease of the tenant for life, (Mrs. Reinders,) would be her lawful heirs; that, therefore, for the want of parties to make a present decree of partition and sale effectual and binding upon these heirs when they came into existence, there could be no partition and sale then.

The circuit court, at special term, sustained this demurrer, and final judgment being entered for the defend-

ants, plaintiff appealed to the general term, where the judgment was reversed. Defendants then appealed to this court.

*Hitchcock, Lubke & Player* for appellants.

Under section 1 of the partition act, (Wag. Stat, p. 966,) there can be no partition of this property until the heirs of Mrs. Reinders, the tenant for life, are known, and they cannot be known until her death. The law contemplates a partition only where all the parties who have interests are *in esse*, and they must be either " joint tenants, tenants in common or co-partners by courtesy or in dower, in fee for life or for years." In the case at bar this one-half of one-half of the fee of this property is at present vested in the heirs at law of the testator, John H. Koppelmann, but may at any moment vest in the persons who, at the death of the widow, (now wife of respondent,) will be her heirs.

Again, to make a partition, or a sale in partition effectual, the court must have before it all of the parties and all of the property. How can the court have all the property before it if any of the interests are not represented for the want of parties not yet *in esse?* These absent parties cannot be bound by the decree. " Sale in partition imports no warranty of title. The deed simply conveys the interest of the parties to the proceedings." *Cashion v. Faina* 47 Mo. 133; *Matlock v. Bigbee*, 34 Mo. 354; *Schwartz v. Dryden*, 25 Mo. 572; *Owsley v. Smith*, 14 Mo. 153.

2. Section 5 of the partition act, (Wag. Stat., p. 967,) in so far as it attempts to bind these persons not yet *in esse* by a decree in partition, is void under the constitution of this State, section 30 of the bills of rights, which reads as follows: " That no person shall be deprived of life, liberty or property, without due process of law." Under this section of the statute, and the cases cited by counsel for re-

spondent, it is proposed to sell this property in partition without giving these unknown parties a voice in the matter; clearly, this is taking their property without due process against them. The cases cited for respondent do not pass upon any such constitutional provision, and, therefore, are no authority here.

3.  That there is a contingent remainder in favor of the heirs of Mrs. Reinders, formerly Koppelmann, is determined by the question, did she take a life estate in this realty? It is not necessary to inquire now whether she took an absolute estate in the personalty or not. That she took only a life estate in the realty is clear from the express language of the will. There is not even an express power of disposition beyond that. The words " then left" cannot be held to imply a power of disposal beyond the payment of debts, and the support and maintenance of the tenant for life. The perishable nature of some of the personalty also gives a meaning to the words "then left." *Gregory v. Cowgill*, 19 Mo. 415 ; *Carr v. Dings*, 58 Mo. 400; *Rubey v. Barnett*, 12 Mo. 1; *Brant v. Virginia C. & I. Co.*, 93 U. S. 326.

4.  Our statute of adoption (Wag. Stat. p. 256), gives the right of inheritance to the child, but does not give the right of inheritance from the child to the adopted parent. The Statute of Descents (Sec. 1, p. 529, Wag. Stat.) provides, that " when any person having title to any real estate    *    *    of inheritance shall die intestate as to such estate, it shall descend    *    *    if there be no children, or their descendants, of the person so dying intestate to his or her father, mother, brothers or sisters." It does not say adopted father or mother. Again: the Statute of Descents makes no distinction as to how the person so deceased acquired the property. If he or she have an estate of inheritance—no matter how acquired— and die intestate, such estate shall pass to the persons named above. Any argument that because this vested estate in Johanna Jaeschke came from her adopted father

it should go to her adopted mother, exclusive of the persons named in the statute, has no force, because there is no distinction of property in the statute of descents. Further, the statute of adoptions in terms confines its operation to the persons "executing the deed of adoption." The petition does not show whether Mrs. Reinders signed the articles. It is certain that the minor brothers of Johanna did not sign it. They are, therefore, not affected by it, and in no event can they be deprived of their right to inherit equal shares with the adopted mother of Johanna, if it may be held (which we utterly deny) that Mrs. Reinders can take a share as "mother" under the statute of descents.

*A. J. P. Garesche* for respondents.

1. The demurrer was properly overruled, even if children should be born of plaintiff's wife; because though not now *in esse* they would be barred by the decree. Freeman on Judg., § 306; Calvert on Parties, 15 vol. Law Lib., p. 31, § 51-52; *Finch v. Finch*, 1 Vesey Jr., 534; *Wills v. Slade*, 6 Vesey Ch. 498; *Mead v. Mitchell*, 17 N. Y., 210; *Academy of Visitation v. Clemens*, 50 Mo., 171.

2. That partition can be made, though some of the interests are contingent or in remainder or reversion; Wag. Stat. p. 966, § 1; *Gaskill v. Gaskill*, 6 Simons 186; *Scoville v. Hilliard*, 48 Ills. 453; *Scoville v. Hilliard*, 52 Ills. 449; *Baylor's Lessee v. Dejarnette*, 13 Grattan 166. By section 5, partition act, if the interest of any one "be unknown to petitioner, or be uncertain or contingent, or the ownership of the inheritance shall depend upon an executory devise, or the remainder shall be contingent, so that such parties cannot be named," the same shall be so stated in the petition. This provision clearly contemplates that this uncertainty, either because parties are unknown, or their interests contingent, shall not defeat the right of partition. It expressly authorizes the prosecution of the

partition; and this becomes the more clear by reference to section 40, which directs the investment of the shares of the parties unknown. It is, then, too clear to admit of a question that even if the will contemplates that those who shall be " heirs " of the wife at the time of her death shall take, that would not defeat the prosecution of the suit. The law contemplates no follies. If, therefore, it would be the children of Mrs. Reinders, should she have any, the petitioner complies with the statute in stating the fact, and no publication is necessary to bring them in to make the decree valid. For publication is to bring in parties *in esse*, to enable interested parties, not served, to come in and to defend their interests. This is the end and aim of a publication; and publication is useless, and it is a farce to notify parties who are stated in the petition not to be *in esse*.

3. The will does not intend that if Mrs. Reinders should, in the future, have children they should take an interest. It does not say "children," but "heirs;" and "heirs" must here be construed to mean ostensible heirs at the death of the testator. *Cox v. Beilzhoover*, 11 Mo. 146; *Academy, &c. v. Clemens*, 50 Mo. 171; *Green v. Sutton*, 50 Mo. 193; *Cornelius v. Smith*, 55 Mo. 533; Redfield on Wills, (3 Ed.) 57, § 4; *Collier's Will*, 40 Mo. 299; *Jamison v. Hay*, 46 Mo. 553; *Flint v. Steadman* 36 Vt. 210; *Huss v. Stephens*, 51 Pa. St. 288.

4. Mrs. Reinders, in respect to the property of the adopted father, was the heir of the adopted daughter Johanna. The will speaks of her as " *our* adopted daughter," and says that the bequest to her is " provided she will be a good girl, and demean herself such to her parent." If intention should prevail, clearly the language would indicate that the change of name from Johanna Jaeschke to Johanna Koppelmann was the culmination of their paternal feelings in her regard. They cherished her, treated her and loved her as their own child, as much so as if she had sprung from their own loins. Very surely in making

this bequest, the testator never contemplated that the brothers and sisters, still less the father, should share in his estate. See also *Graham v. Bennett*, 2 Cal. 506; *Rives v. Sneed*, 25 Ga. 613; *Lunay v. Vantyne*, 40 Vt. 504; *Fusilier v. Masse*, 4 La. 427; *Vidal v. Commagere*, 13 La. Ann. 519.

In *Lunay v. Vantyne, supra*, it is said "there is no difference between adopted children and other children." Why then not the right of inheritance? Particularly in a case like this, where the property comes from the adoptive parent.

Parental and filial rights and duties are reciprocal. If the parent frees his child, he has no claim to its services; nor may the latter longer look to the former for support. If the child serves its father, the father's duty is to furnish the child with the necessaries incident to its station in life. If denied these, the (minor) child may appeal to strangers; and the claims of these last will be by law enforced against the father. If, therefore, these rights be reciprocal, and the adopted child by reason of its adoption inherits from the adoptive parent, why should not the mother, at least, in respect to the property from the adoptive father inherit from the child? For ourselves we are at a loss to answer the question. To deny it to the parent, is to deny it to the child; to deny it to the child is to emasculate the law of adoption, and oftentimes work most serious injustice. Few persons make wills, even where wills are necessary. The adopted child would be without protection except by a will; and after having been treated, caressed by wealthy foster parents, reared in luxury, by the death of the foster father, and his neglect to make a will, thrown upon the world.

*Jeff. Chandler* for respondent, argued that the widow took a life estate, enlarged by the power of sale into a fee, citing *McKenzie's Appeal*, 41 Conn. 607; *Attorney General v. Hall*, Fitzg. 314; *Jackson v. Bull*, 10 Johns. 20; *Rams-*

*dell v. Ramsdell,* 20 Me. 288; *Harris v. Knapp,* 21 Pick. 416; *Homer v. Shelton,* 2 Met. 202; 2 Story Eq. Jur., § 1073; *Wright v. Atkins,* 17 Ves. ——; 2 Hilliard on Real Prop., 581; *Carr v. Dings,* 58 Mo. 405; 2 Redfield on Wills, 659, note 56; *Executors v. Seeger,* 6 C. E. Green ——; *Carter v. Reddish,* 5 Cent. Law Jour. 492; *Brant's Will,* 40 Mo. 279; *Davis v. Boggs,* 20 Ohio St. 566.

NAPTON, J.—The principal questions discussed in this case involve the proper construction of the will of Koppelmann, which is as follows:

I, the subscriber, John H. Koppelmann, of the city and county of St. Louis, State of Missouri, being of sound and disposing mind and memory, and feeling naturally solicitous to settle my worldly affairs, with which Providence has blessed me, in such manner as to prevent all future doubts and difficulties, declare and publish this, my last will and testament: 1st. I will that all my just debts and funeral expenses be fully paid by my executrix hereinafter mentioned, as soon as convenient after my decease. 2nd. I hereby give and bequeath to my beloved wife, Anna Koppelmann, all my estate, real and personal and mixed, for and during her life time. 3rd. The foregoing bequest is made under the express proviso that my said wife will be a mother indeed to our adopted daughter, Johanna, now six years old, that she will bring her up and educate her according to her best means; also that my said wife will carry on and continue my business in company with my co-partners; but I will that no part of my real estate, still less the whole of it, be sold or otherwise disposed of before the lapse of twenty-five years, and should it appear hereafter that the business cannot be carried on with the present capital, then said business shall be reduced to such an extent as to bring it into conformity with the present capital. 4th. After the decease of my said wife, Anna Koppelmann, the *property then left* shall be divided as folows: One-half shall be given to our said adopted daugh-

ter Johanna, provided she will be a good girl and demean herself as such toward her parent, and the other half shall go to the nearest and lawful heirs of mine and that of my said wife, share and share alike. I hereby nominate and appoint my said wife, Anna Koppelmann, to be executrix of this my last will and testament. In witness whereof, I have hereunto set my hand and seal, at the city of St. Louis, this seventh day of May, 1869.

(Signed)                    JOHN H. KOPPELMANN.

The object of all courts in the construction of a will is to ascertain the intention of the testator, where it is possible. It unfortunately happens that where wills are written by persons unskilled not merely in law but in the language in which their intentions are expressed, there are found such contradictory clauses as render it exceedingly difficult to ascertain what is the leading, prominent and controlling object of the will. In such cases courts have established some rules, and some exceptions to them, by which they will be guided—all of them with a view to give effect to the intentions of the testator, as gathered from the entire will.

In this case, the will of Koppelmann gives to Mrs. Koppelmann all his estate, real and personal, for and dur-

1. DEVISE: life estate, not enlarged into a fee by power to sell.

ing her life-time. In a succeeding clause she is impliedly authorized to sell any part of his real estate after the lapse of twenty-five years to enable her to carry on his co-partnership business and to educate the adopted daughter. The property left on the decease of his wife he then directs to be given to certain persons, clearly designated. It is insisted that this power impliedly given to sell the real estate, enlarges her interest in it from a life estate to a fee. The answer to this may be best given in the language of Sir Wm. Grant, in *Bradly v. Westcott* (13 Ves. 445). " The distinction is perhaps slight, which exists between a gift for life with a power of disposition superadded, and a gift to a person indefinitely with a superadded power to dispose by deed

or will. But the distinction is perfectly established, that in the latter case the property vests. A gift to A and such persons as he shall appoint, is absolute property in A without any appointment; but if it is to him for life, and after his death to such person as he shall appoint by will, he must make an appointment in order to entitle that person to anything." The same Judge decided in the case of *Barford v. Street*, 16 Ves. 135, that where there was a gift for life to A, with a power of appointment by deed, or writing or will, A had the entire estate. " An estate for life with an unqualified power of appointing the inheritance," said the Master of the Rolls, " comprehends everything. By her interest she can convey her life estate. By this unlimited power she can appoint the inheritance. The whole fee is then subject to her disposition." It will be observed in reference to this last decision, which upon a cursory view might seem to conflict with the first, that although the devisee is given an express estate for life, yet by subsequent clauses an unlimited power of disposition is given her either by deed or will, and for no specific object. A party cannot give an unlimited dominion of his property to one and at the same time a limited right in it to another; in other words, a remainder cannot be engrafted on a fee.

The distinction taken in *Bradly v. Westcott*, is recognized by this court as early as the case of *Rubey v. Barnett*, 12 Mo. 1, and subsequently in *Gregory v. Cowgill*, 19 Mo. 415, and *Green v. Sutton*, 50 Mo. 190. It is also distinctly announced in *Jackson v. Robins*, 16 Johns. 587. The result is that where there are inconsistent devises the courts are compelled in some cases to enlarge, in others to cut down the estate, in order to carry out the leading and prominent objects of the testator as indicated by a view of the entire will and all its various provisions. In the present case, however, there is no necessity for enlarging the estate for life, given to Mrs. Koppelmann into a fee in order that she may sell a part or the whole of the real estate if the man-

ufacturing business in which Koppelmann was a co-partner required it, since such a power may well co-exist with an estate for life in Mrs. Koppelmann. Admitting that the prohibition against any sale for twenty-five years may be regarded as though it had been only for one year, or had been entirely omitted, the power to sell was limited to a specific purpose and was unaccompanied with a power to dispose of by devise. On the contrary, the property thus left at the death of the wife, was devised specifically to his adopted daughter and the heirs of his wife and himself, in certain proportions named, and the estate consisted of personal property as well as realty. In the case of *Gregory v. Cowgill*, 19 Mo. 415, an express estate for life was given to the devisee without any power of disposition either by deed or will, except what might be implied by the words in the devise over which were " what remains of my estate, both real and personal, after the death of my wife," and it was held that an express estate for life could not be converted into a fee by words of mere implication, unless the general intent of the testator required it. In that case there was no express power given the devisee to sell; in the case now before us such a power may be inferred from the third clause of the will, and the words in the fourth clause, "the property then left," may very well include the personal and real property not disposed of under the power in the third clause.

The case of *Ramsdell v. Ramsdell*, 21 Me. 288, is cited as an authority conflicting with these views, but we do not so understand it. Judge Shepley states it to be a settled rule of law that if the devisee have the absolute right to dispose of the property at pleasure, the devise over is inoperative, but that where the testator gives the first taker an estate for life only by express words and annexes to it a power of disposal on a certain event or for a certain purpose, the life estate is not thereby enlarged into a fee. In that case there was no express estate for life given to the wife, except in regard to certain plate and jewels, and the

will was construed to give her an absolute estate in the land on the strength of the words "if any remains" in the devise over. At the same time the court distinctly recognized the doctrine of *Bradly v. Westcott.*

In *Harris v. Knapp*, 21 Pick. 416, the will provided, after directing the sale of all the real estate of testatrix and the payment of her debts, that what remained of real and personal estate should be given, one-half to her daughter M., (a married woman,) for her use and disposal during her life, and whatever remained at her death to M.'s two daughters. This was held to be not merely a bequest of the income of one-half of such residuary fund during her life, but that M. might, in her life-time, dispose of the principal either in whole or in part. The case seems to have been decided on the principles announced by Sir Wm. Grant in *Barford v. Street.* The bequest was confined to personal estate, and the only question was whether the words "for her use and disposal during her life" limited her to the income of this fund, or gave her a power to dispose of the entire property at pleasure, provided it was done during her life. The court adopted the latter view, and as such a disposition had been made by her and her husband, its validity was sustained.

In *Davis v. Boggs*, 20 Ohio St. 550, the testator bequeathed to his wife "in trust only and during her natural life only" certain rents of real estate, interest on debts due him and dividends on his bank stock, with a proviso that the debts and bank stock should not be diminished. The only question in that case was, whether the legatee took an absolute beneficiary interest in these dividends, or only a trust estate in them, and the court held that, looking into the entire will, it was plain that the testator did not use the words "in trust only" in their technical sense, and that they must be rejected as unmeaning, and that the wife took an absolute property in the dividends, rents and interest so bequeathed to her. So that in this case a trust estate was raised to a beneficial one, as in *Baxter v. Bowyer*,

19 Ohio St. 490, the same court cut down a fee simple to a life estate—both on the same principle, that looking through the entire will and finding other provisions entirely inconsistent with such clauses, they were necessarily rejected or modified in order to carry out the general intent of the testator.

In regard to the will now under consideration, although obviously written by one more accustomed to a foreign language than our own, we do not find. any difficulty in reconciling the life estate of the wife, which is very clearly given her, in all of his property of every description, with the subsequent clauses in which we assume that a power to sell the real estate is given her, manifestly with great reluctance, and restricted to specific purposes and postponed to a very remote period. Such a power we have seen from the current of authorities, only a few of which I have referred to, and those chiefly such as the counsel for plaintiff have argued as maintaining a different doctrine, does not, of itself, enlarge a life estate given in terms to a fee. It is not material in the present action, which is for a partition, whether this power of sale of the real estate is properly inferable from the terms of the third clause of the will or not. Mrs Koppelmann has remarried, never has exercised the power, has conveyed all her interest in the estate to Eugene D. Garesche, and Mr. Garesche has conveyed it to the plaintiff, Reinders, now the husband of Mrs. Koppelmann. So that the only importance it has is in connection with its effect upon the proper construction of the second clause in the will, and we are satisfied that it does not enlarge the life estate given in this clause to a fee.

Assuming that one-half of the remainder vested in Johanna, the adopted child, it is insisted that Mrs. Koppel- mann is her heir, and not her father, Jae- schke, and her brothers. It is urged, that as Johanna would inherit from her mother, by reason of the deed of adoption, the mother should for the same reason in-

2. EFFECT OF ADOP-
TION ON DESCENT.

herit from her. But is not the assumption that the adopted child would be heir to the mother a mistake? Our statute on this subject (1 Wag. Stat. p. 256,) is as follows: Sec. 1. "If any person in this State shall desire to adopt any child or children, as his or her heir or *devisee*, it shall be lawful for such person to do the same by deed, which deed shall be executed, acknowledged and recorded in the county of the residence of the person executing the same, as in the case of conveyance of real estate. Sec. 2. A married woman, by joining in the deed of adoption with her husband, shall, with her husband, be capable of adopting any child or children. Sec. 3. From the time of filing the deed with the recorder, the child or children adopted shall have the same right against the person or persons executing the same for support and maintenance and for proper and humane treatment, as a child has, by law, against lawful parents; and such adopted child shall have, in all respects, and enjoy all such rights and privileges as against the persons executing the deed of adoption. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption."

Passing over the provision which authorizes one to adopt a child as *devisee*, the meaning of which is somewhat obscure and need not be investigated in this case, it is clear, at least, that either the husband or wife may adopt a child, or both, and the rights of the child, which are declared to be the same as against natural (lawful) parents, are limited to the one executing the deed of adoption. In this case Mr. Koppelmann alone executed the deed (so the petition states), and it is not clear that Johanna could have inherited from the mother, had she been seized of a separate estate. This right is given only as against the person executing the deed. This, however, is not material to the present inquiry. It is not a question whether Johanna would have inherited from either the father or mother, but who is to inherit from her. The statute on the subject evidently provides for the heirship of the child from the

father or mother who executes the deed of adoption. Beyond this it is silent. In the consideration of this question, it is not material from what quarter the estate of the child is derived. It may seem great injustice that the property derived from one source should go in a channel never contemplated by the donor; but we may suppose in this case, that the property vested in the adopted child came from an entire stranger to the blood of either her natural or adopted parents, and the same rule must prevail. Was it the intention of the Legislature to sever the natural relationship entirely and for all purposes, so that in case the child survived the natural párents, none of their estate would go to such child, and so that upon the death of the adopted child an estate not derived from the adopted parents would vest, not, according to our law of descents, in her relations by blóod, but would go only to such relations as the adoption created?

"Under the Roman law," it is said in *Vidal v. Commagere*, 13 La. Ann. 517, "the person adopted entered into the family and came under the power of the person adopting him, and the effect was such that the person adopted stood not only himself in the relation of child to him adopting, but his children became grand-children of such. Dig. Lib. 1, p. 7, 1, 23, 27. Hence, when Tiberius was adopted by Augustus, by arrogation, Germanicus became the grand-son of Augustus. The French law also admitted of adoption, and the adopted succeeded to the inheritance of the adoptor. Code Napoleon, art. 350. It was also known to the Spanish law, and the person adopted succeeded as heir to him who adopted him. See Title 16, 4th Partidas." It was held in that case that an act of the Legislature authorizing the adoption of an orphan child, conferred on the child all the rights of a legitimate child, and among them the right of inheriting the estate of those making the adoption. But this throws no light upon the question now to be determined. Our statute confers the same right.

A very cursory examination of the civil law, to which our attention has been called as tending to explain the purpose of our legislation on the subject, will show that our statute is not derived from any such source, unless the use of the term "adoption" should be regarded as so indicating. The subject of adoption and "arrogation" (another form of the same ceremony) forms an extensive branch of the Roman law, containing nice distinctions and minute regulations affecting the adoptor, the adopted and the natural parents. It originated under a form of government and state of society totally different from ours, and has undergone various mutations, not only in the country of its origin, but in the modern governments which succeeded the Roman Empire, and based their codes, to a great extent, upon the ancient system as modified by Justinian. Previous to the time of Justinian, the effect of adoption was to place the person adopted precisely in the position he would have held had he been born a son of the person adopting him, and this is the effect now proposed to be given to our statute. But it will be observed that when this was the law, the ceremony of adoption was a very solemn one, and all parties, the adoptor, the adopted and the natural parents, were required to be present. As observed by Mr. Sandars, (Institutes of Justinian, p. 122,) " a public character was always attached in ancient Roman law to so important an alteration in families as adoption. The sanction of the *curiae* was necessary to its validity. If the person adopted was *sui juris* his entry into a new family (*arrogatio*) was jealously watched, as the *pontifices* would never allow it where there was any likelihood of the sacred rites of the family he quitted being extinguished by his departure from it. The form of gaining the consent of the *curiae* was even continued when the *curiae* were only represented by thirty lictors, until the rescript of the Emperor was substituted as a means of regulating arrogations. * * If the person adopted was under the power of another, the person under whose power he was,

32—68

had to release him from that power, which he did by sell-
ing him (*mancipatio*) three several times, which destroyed
his own *patriae potestas*, and then giving him up to the
adopted parent by a fictitious process of law, called *in ju-
re cessio*, in which he was claimed and acknowledged as the
child of the person who adopted him, and pronounced to
be so by the magistrate before whom the proceeding was
had (*imperio magistratus*).        *        *        The word *adoptio*
was common to both processes, both to *arrogatio*, said by
Gaius to be derived from *rogo* because the person arrogated
was asked before the *curia* whether he consented, and to
*adoptio* in its more limited sense of the adoption of a per-
son not *sui juris*.    For the ceremonies previously required
for the adoption of a person *alieni juris* Justinian substi-
tuted the simple proceeding of executing, in presence of a
magistrate, a deed declaring the fact of the adoption, all
parties to the adoption, that is, the person giving, the per-
son given and the person receiving, being personally present
to give their consent."

        But the law of Justinian changed this.    Copying
from Mr. Sandars' translation, it reads thus:    " But now
by our constitution when a *filius familias* is given in
adoption by his natural father to a stranger, the power
of a natural father is not dissolved ; no right passes to
the adoptive father, nor is the adopted son in his power,
although we allow such son the right of succession to his
adoptive father dying intestate.    But if a natural father
should give his son in adoption not to a stranger, but to
the son's maternal grand-father, or, supposing the natural
father has been emancipated, if he gives the son in adoption
to the son's paternal grand-father, or to the son's paternal
or maternal great-grand-father, in this case, as the rights
of nature and adoption concur in the same person, the
power of the adoptive father, knit by natural ties and
strengthened by the bond of adoption, is preserved undi-
minished, so that the adopted son is not only in the family
but in the power of his adoptive father."    So that the law

of Justinian completely altered the old law of adoption. Under the old law a son lost the succession to his own father by being adopted, and therefore Justinian provided that the son given in adoption to a stranger should be in the same position to his own father as before, and merely gain by adoption the succession to his adopted father in case he died intestate. This kind of adoption was called *adoptio minus plena*, and when the adoptive son was given to a person who was one of his own ascendants, it was called *adoptio plena*.

Without going into further details it will be obvious that our statute, so far from following the Roman law, either before or after the time of Justinian, is distinguishable from it in many important particulars. Our law makes no provision whatever for the assent or concurrence of the natural parents of the party proposed to be adopted, much less for any of those solemn examinations of all parties before a tribunal either judicial, political or religious, such as were required by the Roman law. It makes no distinction between strangers and blood relatives, as to the inheritable capacity of the adopted person, either in acquiring or transmitting property and it makes no provision to prevent the adoptive father or mother from devising the whole estate from the adopted child.

If we look into the Code Napoleon, which contains an article on this subject consisting of several sections (see Code, Title 8) the same important and essential difference may be found. The adoption is prohibited before majority of the adopted party (§ 346), and the adopted retains all his rights in his own family (§ 348) and if the adopted child die without lawful descendants " presents made by the adoptor or acquisitions by inheritance to him, and which shall actually exist at the decease of the adopted, shall return to the adoptor, or to his descendants, on condition of contributing to debts without prejudice to third persons. The surplus of the property of the adopted shall belong to his own relations, &c." Our statute, so far as it

provides for the status of the child adopted, is contained in a single section which simply declares the rights of the adopted to support and maintenance, and the same rights and privileges as a natural child has against the person executing the deed of adoption, which would of course include the right to inherit from the adoptive father or mother. The statute is silent as to whether the child loses the right to inherit from the natural parents and as to the capacity of transmitting property acquired either from the adoptive parent or from any other quarter. The civil law, as we have seen, provides that where the adopted child is a stranger to the blood of the adoptor, the right of inheritance from the natural parents, is not lost; and the Code Napoleon provides that where the property of the adopted child comes from the adoptive parent, on the death of such child it reverts to the adoptive parent, saving the rights of creditors, and where it does not come from such a source it goes to the natural parents or other blood relatives according to the law of descents. Such a provision commends itself to our sense of justice, but it is not in our statute. What changes, if any, were intended to be made in our statute of descents in connection with this law of adoption is a mere matter of conjecture, and we have no authority to depart from the rules of descent established in the general statute on that subject.

An objection has been made to this proceeding for partition which ought properly to have been noticed in advance. 3. HEIRS. As the petitioner is himself the owner of the life estate in the whole tract proposed to be divided, and also owns the interest of a part of the remainder mentioned, no objection can of course be made to the partition on account of the entire property being subject to a life estate. The objection is, that as Mrs. Koppelmann is still living, her heirs are not ascertainable, and not in existence, and their interests, should she yet have children, would be destroyed. The answer to this objection by the petitioner is that the word "heirs" used in the will was meant heir ap-

parent or the heirs of Mrs. Koppelmann in existence at the death of the testator; and there is no doubt that there are a number of cases in England as well as this country that allow this word to be so construed in wills, where the intent of the testator is manifest, that he refers to such heir or heirs but in this case the remainder is given on the death of Mrs. Koppelmann, and where he uses the term "her heirs," as entitled to a remainder, there is nothing in the will to lead to the inference that he meant by the word heirs to restrict them to such heirs as existed on his death, or were in existence at the time he wrote his will, but on the contrary he referred to heirs when she died. In Goodright on dem. of *Brooking v. White*, 2 Black. 1011, the devise was to the heir of his daughter Margaret, then living, and this was held as a sufficient *descriptio personae* to entitle the heir apparent on the demise of the testator to take. And in *Carne v. Roch*, 7 Bingh. 226, a devise was made to the heirs of Mrs. Roch of Butterhill, who was living at the death of the testator, and it was determined by all the judges that the eldest son of Mrs. Roch took the estate devised, although Mrs. Roch was living at the time of the trial. But the remainders in this case are given on the determination of the life estate of Mrs. Koppelmann, and therefore, when her heirs are mentioned in the will, there is no reason to depart from the usual acceptation of the word "heirs."

But the question remains, will this remainder defeat the partition because it is unknown who will be the heirs of Mrs. Koppelmann until her death. We think not. Apart from any statute, the English courts had no hesitation in decreeing partitions in such cases. In *Wills v. Slade*, 6 Ves. Ch. 498, it was held by Lord Eldon that "it was no objection to a partition that other persons may come *in esse* and be entitled; for if so, in every case where there is a settled estate with remainder to persons who may come *in esse*, there never can be a partition." In *Gaskell v. Gaskell*, 6 Sim. Ch. 643, it was held

*4. PARTITION: contingent estates.*

that a tenant for life of an undivided share of an estate, with remainder to his unborn sons in tail, may file a bill for partition, and the decree would be binding on the sons when *in esse*. In *Mead v. Mitchell*, 17 N. Y. 210, the court of appeals of New York, composed of eight judges, recognized with unanimity the same doctrine under the statute of that State which is substantially identical with ours. The parties not *in esse* are represented by those who take subject to their rights, but the partition or sale is conclusive so far as third persons or purchasers are concerned. Our statute declares that the sheriff's deed shall be a bar against all persons interested in the premises, who shall have been parties, and against all others claiming from such parties. Wag. Stat., § 34, p. 971. Of course parties not *in esse* cannot be made parties to the suit for partition, except by naming the owner of the particular estate to which, on certain contingencies, they become entitled, and this is recognized by our statute which declares that if the interest of any one " be unknown to petitioner or be uncertain or contingent, or the ownership of the inheritance shall depend upon an executory devise, or the remainder shall be contingent, so that such parties cannot be named, the same shall be so stated in the petition." The requisition of such statement implies that the facts so stated shall constitute no bar to a partition.

It is insisted, however, that our statute is unconstitutional, for the reason that it conflicts with the provision 6. PARTITION SALE CONCLUSIVE which declares " that no person shall be deAGAINST PERSONS NOT IN ESSE; con- prived of life, liberty or property without stitutionality of statute. due process of law." This provision of our constitution, doubtless, may be found in that of New York where the case of *Mead v. Mitchell* was decided, and in that of most of the other States, and is certainly in the constitution of the United States, and is in all a translation from *Magna Charta*, which we may assume was binding on the English judges. The due process of law required is not dispensed with in our statute.

The judgment of the general term of the St. Louis circuit court is affirmed. The other judges concur.

AFFIRMED.