RUSSELL, *Administrator*, v. EUBANKS, *et al.*, *Appellants.*

1. **Wills, Construction of.** Wills should be construed according to the intention of the testator, which should be gathered from a consideration of the whole instrument, including all its clauses, as well

as its general scope and design, but such construction must not be in contravention of law.

2. **Will: LIFE ESTATE: POWER OF SALE: REMAINDERMAN.** The will of a husband giving a life estate to his wife with remainder over to legatees named in the will, but giving the wife power to sell and dispose of the property, creates in her a fee-simple estate if she exercises the power, but if she does not, her life estate is not enlarged and converted into a fee, and the remainder over is valid, and, at her death, takes effect in the remaindermen.

3. The will in this case construed to create only a life estate and the remainder over held valid.

*Appeal from Audrain Circuit Court.*—Hon. ELIJAH ROBINSON, Judge.

AFFIRMED.

*M. Y. Duncan*, and *Macfarlane & Trimble*, for appellants.

(1) There is a clear fee-simple devised in the first clause as to all the estate after the debts are paid. R. S., sec. 4004; *Green v. Sutton*, 50 Mo. 192; 3 Cranch 134; *Jackson v. Robbins*; 16 Johns. 537; *Jackson v. Bull*, 10 Johns. 18; *Attorney General v. Hall*, Fitzgibbons 314. (2) No subsequent limitation could be engrafted upon the fee given in the first clause. *King v. King*, 12 Ohio 390; *Berkeel v. Jacoby*, 36 Iowa 273; *Ruby v. Barnett*, 12 Mo. 6; 2 Redfield on Wills (2d Ed.) 277. The cases of *Reinders v. Koppelman*, 68 Mo. 482; *Gregory v. Cowgill*, 19 Mo. 415; *Foot v. Sanders*, 72 Mo. 616, and *Campbell v. Johnson*, 65 Mo. 439, have no application to this case. There is no attempt at devising a life estate in the second clause of the will, but simply an enlarging—if such a thing can be done—of the power over the estate devised in first clause. (3) The absolute power of sale and conveying in second clause can have no reference to paying the debts, for the reason that Mrs. Williams was not made executrix. Had she been left executrix then there might have been some force in the argument. (4) This leaves the conclusion firmly fixed that there was

no intention to limit Mrs. Williams in the free use, enjoyment and disposal of the entire estate. (5) This establishes beyond cavil the estate to be fee-simple absolute in Mrs. Williams, destroys any ground for a limitation over as repugnant and void.

*T. B. Buckner*, for respondents.

(1) The intention of the testator when ascertained must control in the construction of the will. The intention is the controlling guide. *Turner v. Timberlake*, 53 Mo. 371; *Gaines et al., v. Fender*, 57 Mo. 342; *Carr v. Diggs*, 58 Mo. 400; *Smith v. Hutchison*, 61 Mo. 83; *Allison v. Chaney et al.*, 63 Mo. 279; *Reinders v. Koppelman*, 68 Mo. 490; *Foote v. Saunders*, 72 Mo. 616. (2) The intention is not to be gathered from single words nor single sentences, but from a consideration of the whole instrument and the general design and scope of it. *Turner v. Timberlake*, 53 Mo. 371; *Allison et al., v. Chaney*, 63 Mo. 279; *Reinders v. Koppelman*, 68 Mo. 490. (3) That to give effect to the intention of the testator as gathered from the entire instrument, and the general design and scope of it, the courts must sometimes cut down, and sometimes enlarge estates, in order to carry out the leading and prominent objects of the testator. *Reinders v. Koppelman*, 68 Mo. 490; *Davis v. Boggs*, 20 Ohio St. 550; *Baxter v. Bowver*, 19 Ohio St. 490; *Smith v. Bell*, 6 Peters 68. (4) A power of disposition added to an express life estate does not enlarge it into a fee-simple estate, and the remainder over after the life estate would vest and be valid. *Ruby v. Bennett et al.*, 12 Mo. 1; *Gregory v. Cowgill*, 19 Mo. 415; *Green v. Sutton*, 50 Mo. 190; *Reinders v. Koppelman*, 68 Mo. 490; *Burwell v. Anderson*, 3 Leigh (Va.) 348; *Harleson v. Redd*, 15 Ga. 151; *Burleigh v. Clough*, 52 N. H. 267; *Bradley v. Wescott*, 13 Vesey 445; *Jackson v. Robins*, 16 Johnson 587; *Smith v. Bell*, 6 Peters 68; 2 Redfield on Wills, sec. 52, p. 345.

RAY J.—This cause was begun in the circuit court of Audrain county, upon a bill in equity, filed by Franklin Russell, administrator of Julia Ann Williams, deceased, for the purpose of construing the will of Caleb V. Williams, her late husband. The bill states substantially that plaintiff is administrator, etc. ; that his intestate, at her death, left personal property consisting of notes, accounts, and money amounting to $1,462.60, and certain real estate. That she acquired and held all said real and personal property under the will of one Caleb V. Williams, deceased, until her death, which said will was duly probated. The bill then alleges that Johnson W. Eubanks and others, naming them (appellants herein), are the heirs at law of the said Julia Ann Williams, and as such claim said estate. That Henrietta Gregg Robinson, and the heirs of Frances Ellen Robinson, deceased, claim said property as legatees under the will of the said Caleb V. Williams, deceased.

The heirs of Mrs. Williams answer, alleging that the said will gave to their ancestor an absolute estate in said property in fee, and it descended to them as such heirs. The legatees answer, claiming that by the terms of said will they were entitled to said property.

Upon the trial the will was offered in evidence and is as follows :

"July 29, 1874. The last will of Caleb V. Williams, of Audrain county, and state of Missouri. Being of sound mind at the time of making and publishing this my last will and testament, I give and devise all my estate, real and personal property to my beloved wife, Julia Ann Williams, after settling up all my lawful debts. The said Julia Ann Williams is to have absolute control ∧ to sell, to make deeds, and dispose of property as she may please of the said property during her lifetime ∧ only what may be needed to pay the lawful debts. At her death and after I will and bequeath all my property, real and personal, that she may have at her death to my two children of

John Robinson, namely, Frances Ellen and Henrietta Gregg Robinson.    These children to share and share alike.    To have and to hold and inherit all my property after her death.    These two children I adopt as my lawful heirs, namely, Frances Ellen and Henrietta Gregg Robinson.    I do hereby appoint my friend, Franklin Russell, executor of this my last will and testament, the said executor to receive reasonable compensation for his services for settling up my estate.

"Caleb V. Williams."

As will be seen, the controversy is between the heirs at law of said Julia Ann Williams, and the legatees named in the will.    The court found the issues for the legatees and construed the will to give to the said Julia Ann Williams an estate for her life only in said property with the power to sell and dispose of the same during her life, with the remainder over to the legatees named in the will.    After unsuccessful motions for new trial and in arrest of judgment in the trial court, the heirs at law appealed the cause to this court.    The question, as has been seen, is whether the devisee, Mrs. Williams, under the will, took an absolute estate in fee, or whether she took an estate during her lifetime, with remainder over at her death to the legatees named in the will.    The solution of this question depends upon the intention of the testator, to be gathered from the will itself.    That intention is to be gathered, not from single words, passages, or sentences, but from a consideration of the whole instrument taken together in its general scope and design.    It may be conceded that that intention must not be in contravention of law; but with this limitation, these propositions are, we believe, not questioned by the authorities, in this state, or elsewhere : 58 Mo. 400 ; 61 Mo. 83 ; 63 Mo. 279 ; 72 Mo. 616 ; 68 Mo. 490 ; 53 Mo. 371 ; 19 Ohio St. 490, and 6 Peters (U. S.) 68.

For the heirs it is contended that the first clause of the will, without more, clearly evinces an intention on the part of the testator to give his wife a fee-simple title

to all his property or estate, after the payment of his debts. For them, it is also insisted that the second clause of the will, properly construed, but confirms that intention ; that the absolute control of the property, with power of sale and disposition, carries the fee, and that the limitation over is void and inoperative as being in contravention of the rules of law, etc. These positions, we think, are not well taken. The will itself is very brief. In some respects it is awkwardly and inartificially drawn. Upon the face of the paper there is an "interlineation," in the second clause, which gives rise to much, if not all, the doubt and difficulty in construing the same. This interlineation, as it appears upon the paper before us, occupies a part of two spaces between the lines, and has two marks $\wedge$ indicating where it comes in. On the original will, we find by inspection that it is so written as to occupy the entire length of the two spaces, or nearly so. One of said interlineation marks is in ink, and is placed after the word "control ;" and the other has some appearance of being in pencil, and is placed after the word "lifetime ;" but no question is made in the pleading, or otherwise, that said interlineations or marks are not genuine parts of the will. Nor can there be any question, we think, that the matter so interlined (although occupying separate spaces between the lines, and having two marks $\wedge$ $\wedge$ indicating where the same comes in), in point of fact, constitutes but one entire interlineation, and wherever inserted, is to be read as an entirety, and not as two separate interlineations. Otherwise, bungling tautology is produced and the sense much obscured, if not rendered unintelligible.

We may further premise that it is to be presumed that the interlineation was made, necessarily, after the will (or, at least, the clause in which it occurs), was written, and that, when first written, the document was complete without it. It does not follow, however, that the same when made did not become a part of the will, as much as any other portion. But the fact is mentioned,

Russell v. Eubanks.

as it may serve to arrive at the real intention of the testator, and thus aid in its proper construction. The second clause, prior to the interlineation, must have read as follows: "The said Julia Ann Williams is to have absolute control of the said property, during her lifetime, only what may be needed to pay the lawful debts." "To interline," Webster says, is "to write between lines already written, for the purpose of adding to, or correcting what is written." Further on we shall have occasion to consider what was the purport of the second clause, prior to the interlineation, and what was the legal effect of the matter so interlined. The manifest intention of the testator, by the will as originally drawn, to be gathered, as above stated, from a consideration of the whole instrument, including all its clauses, as well as its general scope and design, was, we think, to give the wife an estate for life in all his property, except what was necessary to pay debts, with remainder over to the legatees named in the will. Indeed, her absolute control of the property in express terms, is declared to be *during her lifetime*. The intention of the will, when amended by the interlineation, was to superadd to her estate during her lifetime the power to sell and dispose of the property as she pleased. The effect of this added power of disposition, if exercised by her, it may be conceded, would have been to carry the fee, and thus cut off the remainder. But it was only a power, and if not exercised her life estate was not thereby enlarged and converted into a fee, and the remainder over, at her death, is valid and takes effect in the remainderman. These positions, we think, are abundantly sustained by adjudications in this state and elsewhere. *Rubey v. Barnett et al.*, 12 Mo. 3; *Gregory v. Cowgill*, 19 Mo. 415; *Green v. Sutton*, 50 Mo. 190; *Reinders v. Koppelman*, 68 Mo. 490; *Burwell v. Anderson*, 3 Leigh (Va.) 348; *Haralson v. Redd*, 15 Ga. 151; *Burleigh v. Clough*, 52 N. H. 267; *Bradley v. Wescott*, 13 Vesey 445; *Jackson v. Robins*, 16 Johnson 587; *Smith v. Bell*, 6 Peters 68; 2 Redfield on Wills, sec. 52, p. 345.

As to the proper place where the said interlineation should come in, we think it was intended to be inserted after the word "lifetime." If so, the second clause would then read as follows: "The said Julia Ann Williams is to have absolute control of said property during her lifetime; to sell, make deeds and dispose of the property, as she may please, only what may be needed to pay the lawful debts." That is, such of the said property as might be needed to pay debts was, by the second clause, when amended, as well as before, reserved from her absolute control and power of sale, to the same extent as in the first clause of the will. It is well settled, we think, by the authorities above cited, that the express life estate clearly given the wife in the first instance, by the second clause was not converted into a fee by superadding thereto the power of sale, unless the power was exercised by her, which is conceded not to have been done in this case. When looking at the entire instrument it is difficult, if not impossible, to resist the conclusion that the testator did not suppose that he had given his wife the property in fee, either by the first or second clause, or by both together. The fact that by the second clause she is to have the absolute control of said property *during her lifetime*, rebuts the presumption that by the first clause he designed to give her the fee. This intent is emphasized by the third clause, by which, in express terms, he wills and bequeaths all *his* property that his wife may have at her death, to the legatees, named in that clause. He further declares that said legatees are to have and to hold and to *inherit* all his property, after the death of his wife, and in express terms declares that he adopts them as his lawful heirs. This he would not have done if he had imagined that he had already, by the first and second clauses of the will, estopped himself entirely of all title to the property so limited to said adopted heirs.

It may be true that he intended by the power to sell and dispose of the property as she pleased, to enable her

by exercising the power, to convert her life estate into a fee, but it is equally true that he intended and so provided that, in case she did not exercise the power, the property so remaining at her death should go to and vest in the legatees in remainder. Of this, we think, under the language of the will and the rules of construction, there can be no reasonable doubt.

Finding no error in the ruling or construction of the circuit court, its judgment is affirmed. All concur.