Tom J. Brown and Ellen W. Smith, Plaintiff-Appellants, v. David B. Bibb and S. B. Bibb, His Wife; Opal Temple and Russell Temple, Her Husband; Agnes Louney, Defendants-Respondents, Bobby Norvell, a Minor, Defendant-Appellant.—No. 39614.—201 S. W. (2d) 370.

Court en Banc, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Brevator J. Creech* for Tom J. Brown and Ellen W. Smith, *B. M. Justeson* for guardian of Bobby Norvell, a minor, appellants; *B. Richards· Creech* of counsel.

150

*Edward V. Long* and *F. D. Wilkins* for David B. Bibb and S. B. Bibb, his wife, Opal Temple and Russell Temple, her husband, respondents; *Rendlen, White & Rendlen* of counsel.

CLARK, J.—An opinion was adopted in this case in Division Two. After transfer to and reargument in banc, the divisional opinion was rejected and the case reassigned. The writer, after further study of the record and briefs and independent research, believes the divisional opinion reached the right result in affirming the judgment of the trial court.

Plaintiffs and one defendant appeal from an adverse judgment in a suit to determine title, ejectment and partition. The facts are agreed. Appellants Brown and Smith are grandchildren, and appellant Norvell is a great grandchild, of Joseph H. and Maria Roberts.

On January 5, 1874, Joseph, then the owner of the land, with his wife joining, executed a deed of trust to secure a note signed by him only. On December 3, 1874, Joseph, without his wife, Maria, joining, executed a quitclaim deed to his mother, Elizabeth Roberts. On the same day Elizabeth executed a quitclaim deed to Maria "and her bodily heirs by Jo. H. Roberts and assigns, forever." Both deeds were subject to the deed of trust.

In 1887 Elizabeth Roberts died and Joseph was appointed her administrator. He illegally appropriated money belonging to her estate and used a part of same to pay his note which was secured by the deed of trust above mentioned, and had the same satisfied of record on November 30, 1887. In 1888 Joseph died and his successor as administrator of Elizabeth's estate sued and recovered the amount of Joseph's defalcation from the surety on his bond, Walker Davis.

Davis then sued Maria Roberts and her two children, Maggie and Carrie, who were the only living remaindermen under the quitclaim deed from Elizabeth to Maria. The defendants were personally served and guardians ad litem were appointed for the two children, who were then minors. Davis procured a decree for the recovery of the money

he had been compelled to pay, subrogating him to the rights of the holder of the note and deed of trust and ordering the land sold to satisfy the decree. The land was sold under a special execution and Maria Roberts became the purchaser. In 1937 Maria sold part of the land to respondents, Bibb and wife, for $1,000.00 and they have made improvements to the value of $1,990.00. In the same year she sold the remaining portion to her grandson, Russell Temple and his wife, and they have made improvements to the value of $310.00.

Maria Roberts died December 3, 1943, her daughters, Carrie and Maggie, having predeceased her in 1934 and 1935, respectively. Maria left no living children. Her daughter Carrie's only children are Tom J. Brown and Ellen Smith, plaintiff-appellants. Maggie's heirs are defendants, Russell Temple, Agnes Louney and Bobby Norvell. Agnes Louney has deeded any interest she may have to the Bibbs and Temples defendants; Bobby Norvell disappeared in 1935 when about four years old and has not been heard of since. He is represented in this suit by a guardian ad litem.

The effect of the deed executed by Elizabeth Roberts was to grant a life estate to Maria with contingent remainder to her bodily heirs by her husband, Joseph, living at her death. Appellants constitute such bodily heirs. [Sections 3499, 3500, Revised Statutes Missouri 1939, (Mo. R. S. A.) (All references to statutes herein, unless otherwise designated, are to the revision of 1939 and corresponding sections of Mo. R. S. A.) Davidson v. Todd, 350 Mo. 639, 167 S. W. (2d) 641.]

Appellants claim that the purchase by the life tenant, Maria, is presumed to have been for the protection of the interests of the remaindermen as well as her own, citing Allen v. DeGroodt, 105 Mo. 442, 16 S. W. 494; Herndon v. Yates (Mo.), 194 S. W. 46, and Souders v. Kitchens, 345 Mo. 977, 137 S. W. (2d) 501. The law on this point is well stated in the Souders case, which reviews the other two cases cited by appellants, and does not accord with appellants' contention, under the facts of the instant case. The claim for which the land was sold was not the debt of Maria Roberts or of the remaindermen, but, if valid as a lien upon the land, it was superior to the estates of both the life tenant and the contingent remaindermen. As held in the Souders case, overruling the Herndon case, Maria Roberts, by her purchase, is not presumed to have intended to make an advancement to her children or descendants. She bought at a judicial sale under a decree which she did not procure and which purported to sell the entire title, and she had the same right to buy as a stranger would have had. True, in some circumstances when a life tenant or a tenant in common buys an outstanding title the remaindermen or other tenants can preserve their interests by contributing within a reasonable time their fair share of the purchase price. Appellants, by their pleadings in the instant case, do not raise that

issue. They do not claim that the purchase by Maria afforded them any benefit, nor do they offer to make allowance for the amount she paid, or for the enhanced value due to improvements made by her grantees. Their theory is that the 1890 sale was entirely void as to them. If their theory is incorrect, then Maria Roberts took the entire title for herself and not in trust for herself and the remaindermen. [Dudgeon v. Hackley (Mo.), 182 S. W. 1004; Bragg v. Ross, 349 Mo. 511, 162 S. W. (2d) 263; Owen v. Long, 340 Mo. 539, 104 S. W. (2d) 365; Starkweather v. Jenner, 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602.]

Appellants contend that the 1890 judgment was merely a money judgment and did not subrogate Davis to the rights of the person who held the note and deed of trust at the time it was satisfied of record. Their main argument on this point, aside from their claim that the contingent remaindermen were not parties to the suit, seems to be that the judgment did not expressly cancel the record of the satisfaction of the deed of trust. Walker Davis' petition in the 1890 suit, in substance and among other things, alleged: the illegal use by Joseph Roberts of funds in his hands as administrator to pay the note and release the deed of trust; the recovery from Davis, as surety on Joseph's administration bond, of the amount of Joseph's defalcation; the conveyance of the land by Joseph to his mother in her lifetime and her conveyance to Maria, Joseph's wife, and her bodily heirs by Joseph, and that this conveyance was subsequent to the execution and recording of the deed of trust; that Joseph had died and that Maggie and Carrie were the children of Joseph and Maria and the "only heirs" of Maria. The petition prayed that Davis have judgment for the amount he had been compelled to pay; that the same be declared a lien on the land; that he be subrogated to the rights of the holder of the note before the deed of trust was wrongfully released, and that the land be sold to satisfy the lien. The decree followed the petition, finding all the facts for the plaintiff, Davis, established the lien of the deed of trust and subrogated Davis to the rights of the holder thereof, and ordered the land sold as prayed.

Maria and her bodily heirs were not personally liable on the note or for the amount of Joseph's defalcation and a general money judgment against them would not have been proper, but we do not construe the decree to render such a judgment. It finds that Davis was compelled to pay for Joseph something more than $500.00, then goes on to say that Davis "have and recover" from defendants the sum of $290.00, the amount of the note secured by the deed of trust, and ordered the land sold to satisfy a lien for the latter amount with interest. The return of the sheriff and the sheriff's deed were in accordance with the decree.

We do not agree with appellants that it was incumbent on Davis to pursue some other remedy which he may have had, nor that

it was necessary for the decree in express terms to cancel the record of the release of the deed of trust. We hold that the allegations of Davis' petition and the wording of the decree were sufficient to establish his right to subrogation. [Sections 3324, 3325, 3339; Wernecke v. Kenyon, 66 Mo. 275; 60 C. J., pages 833-5, section 136; 50 Am. Jur., page 774, section 145.]

The decisive question here is: Are the appellants, who were then unborn, bound by the proceedings in 1890 which culminated in the sale to Maria Roberts? The petition and decree in that suit did not expressly refer to unborn persons who might at the death of Maria Roberts qualify as her bodily heirs. If such persons, appellants herein, are bound by that suit it must be because it can be held that they were represented by one or more of the living defendants then in court.

The doctrine of representation or virtual representation is well recognized in equity. It does not depend upon a statute, although its application is similar, but not entirely the same, as the operation of our statutory class action. [Session Acts of 1943, page 362, section 19.] Without attempting to give a comprehensive definition of the doctrine, applicable to all cases, we state its application to the instant case as follows: the unborn contingent remaindermen are bound by the decree in the 1890 suit, although they could not be brought into court, if the pleadings and decree were sufficient to reach their interests, and their interests were so represented by others who were before the court as to receive actual, fair and efficient protection. [2 Restatement: Property, sections 182, 193; 30 C. J. S., pages 577-8-9, section 145; 34 C. J., page 1000, section 1421; 39 Am. Jur., page 925, section 51.]

In the 1890 suit the defendants were the life tenant, Maria Roberts, and her only living children, Carrie and Maggie, inaptly termed her "only heirs." Of course, Maria while living had no heirs and it was apparent from the petition, as subsequent events proved, that her then living children might never be her heirs and that other persons might qualify as her bodily heirs at her death. Surely the plaintiff, Davis, did not have to wait until the ultimate takers of the property could be determined, for that would be to deny him all remedy. It must be conceded that there was some method whereby he could presently enforce his remedy. In a statutory class suit where there are or may be living persons, known or unknown, not made parties, it is necessary to state that fact and further allege and prove the reason for their omission and that their interests are properly represented by parties to the suit. But in the 1890 suit it would have added nothing to expressly allege that there was a possibility that unborn persons might succeed to the title. That was apparent from the petition. Nor would it have added anything to expressly allege that the interests of possible unborn persons were

represented by the living defendants. That was a question of fact and law also arising on the petition.

The authorities heretofore cited and others to be discussed later announce that the doctrine of virtual representation may be invoked to bind the interests of persons not in being, provided all the interests owned by persons in being are before the court, and some one or more of them would be adversely affected by the decree equally with the class not in being, and would therefor have the same interest and would be equally certain to present to the court the merits of the question upon which the decree is sought.

In the 1890 suit the only person owning a vested estate, the life tenant, and the only living persons with an expectancy of sharing in the fee were in court. The same deed which granted to Maria Roberts a life estate also granted the fee to her bodily heirs. She could not defend her right to a life estate without defending the interests of the contingent remaindermen. She was represented by able attorneys and there is nothing to indicate that she did not in good faith defend the interests of herself and the contingent remaindermen, even though she bought the land at the sale. There is nothing to indicate that she was guilty of fraud or collusion in procuring the sale. [Edwards v. Harrison, (Mo.) 236 S. W. 328.]

Also, the interests of Maggie and Carrie Roberts were identical with that of any unborn children or descendants of Maria who might thereafter qualify as her bodily heirs. Maggie and Carrie were minors, but they were represented by a guardian ad litem who was an attorney, and, being minors, their interests were under the especial protection of the court. They had no vested interest, but they had a possibility and, so far as human wisdom could then foresee, a probability of obtaining an interest in the fee at their mother's death. They had the same incentive to defend their expectancy as they would have had to defend a vested interest, and they could not defend it without also defending the interests of any unborn children or descendants of their mother.

We are aware that it is stated in 30 C. J. S., page 584, section 145: "Contingent remaindermen without any vested interest cannot represent subsequent remaindermen or tenants in tail," citing Cannon v. Barry, 59 Miss. 289, and 21 C. J., page 296, which cites Williams v. Hassell, 74 N. C. 434. Cannon v. Barry does contain a statement substantially like that quoted above, but the actual holding is not in point as to representation of unborn persons. That case holds that contingent remaindermen could not recover damages from the life tenant for *past* waste, [they might never have a vested interest and thus never be damaged] but could enjoin *future* waste, provided they brought in the trustee holding the legal title and other *living* contingent remaindermen.

Williams v. Hassell, 74 N. C. 434, and Miller, ex parte, 90 N. C. 625, merely hold that contingent remaindermen cannot compel partition. That ruling accords with certain cases, hereafter mentioned, decided by us, the reason being that contingent remaindermen may never have an estate and so have no right to partition.

Whatever may be the law in other jurisdictions, this court has definitely taken the position that living contingent remaindermen,. having no vested estate, may represent and bind the interests of unborn contingent remaindermen. Jackson v. Miller, 288 Mo. 232, 232 S. W. 104, so holds on facts quite like those in the instant case. There a woman had been induced to convey her land to her brother-in-law who reconveyed it to her and her bodily heirs. Later she sued to set the deed aside and have herself decreed the owner in fee. The defendants were her brother-in-law and her minor children who were represented by a guardian ad litem. The trial court set the deed aside and the guardian ad litem appealed, contending, in substance, that the decree was invalid because some or all of the children might predecease the life tenant and other children might be born to her. We held that any unborn children were represented by those in being and the decree was binding on their contingent interests. The only difference between that case and the instant case is that the petition in Jackson v. Miller stated that the living children were made parties in their own right and as representing the whole class of bodily heirs. That is a material allegation in an ordinary class suit where it is claimed that a part of a class of living persons represent the whole class, known or unknown, but we fail to see why such an allegation was necesasary in the case brought by Davis in 1890. The petition there showed the possibility that unborn persons might become bodily heirs of the life tenant. The question of whether such unborn persons were in law and fact represented by living parties to the suit was raised by the pleadings without an express declaration that they were so represented, although a careful pleader might make such an allegation.

In White v. Campbell, 316 Mo. 949, 292 S. W. 51, we approved Jackson v. Miller, the facts in the two cases being alike. We reached the same conclusion in Edwards v. Harrison, (Mo.) 236 S. W. 328; Sparks v. Clay, 185 Mo. 393, 84 S. W. 40; Acord v. Beaty, 244 Mo. 126, 148 S. W. 901; Reinders v. Koppelmann, 68 Mo. 482, and other cases. In Edwards v. Harrison many cases from other states are cited.

Reinders v. Koppelmann, Sparks v. Clay, and Acord v. Beaty. have been criticized and partially overruled, but not as to the doctrine of virtual representation, by the following cases: Gray v. Clements, 286 Mo. 100, 227 S. W. 111; Gray v. Clement, 296 Mo. 497, 246 S. W. 940; holding that a life tenant cannot compel partition in a suit against remaindermen; Gibson v. Gibson, 280 Mo. 519, 219 S. W. 561, holding partition cannot be had contrary to the provisions of

a will; Stockwell v. Stockwell, 262 Mo. 671, 172 S. W. 23, partition denied in a suit by a mother and one of her children against her other child, the title being held by the mother for life with remainder to her bodily heirs; [of course, the land could not be divided among such interests and a sale could not be ordered without a showing of necessity as provided in a statute mentioned later;] Hill v. Hill, 261 Mo. 55, 168 S. W. 1165, same holding as in Gibson v. Gibson.

Reinders v. Koppelmann and similar cases were cited in the briefs, but not mentioned in the opinion of Heady v. Crouse, 203 Mo. 100, 100 S. W. 1052. There the title to land was held by Mrs. Heady for life with remainder in fee to her bodily heirs. She brought suit against her living children and procured a decree for the sale of the land and reinvestment of the proceeds. We held the decree void because no necessity was shown for the sale, either in equity generally or under a statute·then in force. In the course of the opinion we said that two of the children ''never became her heirs because they died before she did and their children who did become heirs of her body were not born until after the decree was rendered. These latter were not bound by the decree, even if the others had been, because they derived their title, not by inheritance from their mother in whom no title ever vested, but directly from the will as being heirs of the body of their grandmother.'' We think the quoted statement is somewhat misleading. True, the unborn grandchildren of the plaintiff were not bound by the decree and neither were the living children who were parties to the suit; all because the court was without jurisdiction to render the decree on the allegations of the petition. If the quoted language was intended to mean that the interests of unborn contingent remaindermen cannot be bound by representation by living persons, the statement does not accord with our decisions prior and subsequent to Heady v. Crouse.

In McConnell v. Deal, 296 Mo. 275, 246 S. W. 594, the plaintiff, who held title to land for life with remainder to her bodily heirs, sued her children, as living bodily heirs and as representing such bodily heirs as might be subsequently born, and procured a decree for the sale of the land and the appointment of a trustee to manage the fund. Held, that the decree was void because the petition did not show necessity for the sale; also that unborn remaindermen were not represented. The opinion was by Judge Higbee. Judges Walker, Woodson, and D. E. Blair concurred. Judge J. T. Blair concurred in the result, and Judges Elder and Graves dissented, the latter in a separate opinion.

What was said in Heady v. Crouse and in McConnell v. Deal, concerning the doctrine of representation, was obiter and not in accord with the later case of White v. Campbell. The latter was a division case, written by Judge White and concurred in by Judges Walker and D. E. Blair, two of the judges who concurred in the majority opinion in McConnell v. Deal.

In Boone v. Oetting, 342 Mo. 269, 114 S. W. (2d) 981, the title to land was held by Mrs. Bozarth for life with remainder to her bodily heirs. She and some of her children brought suit in partition against her other children. Judgment was rendered and the land sold. We held the judgment void and so it was because the plaintiffs had no right of action. The plaintiff, Mrs. Bozarth, sole owner of the life estate, had no interest subject to partition and no right to compel partition among successive owners; and contingent remaindermen are not entitled to partition because they may never have a vested interest. [Dodd v. McGee, 354 Mo. 644, 190 S. W. (2d) 231.]

We have a statute, section 1710, which permits the owner of a vested life estate, under proper allegations, to compel a sale and conveyance of the fee, including the interest of the contingent remaindermen, and the preservation of the fund for all persons interested. Under that statute the interests of unborn persons would necessarily have to be represented by living parties.

From what we have said it follows that the decree of the trial court, vesting title in respondents, must be and is hereby affirmed. *Conkling, Douglas* and *Leedy, JJ.,* and *Tipton, C. J.,* concur; *Ellison, J.,* dissents in separate opinion; *Hyde, J.,* dissents in separate opinion.

ELLISON, J. (dissenting).—I respectfully dissent from the reasoning and result of the principal opinion. The plaintiffs-appellants in this quiet title, ejectment and partition suit challenge the validity of a subrogation decree in the chain of title to the 120 acres of land in Pike county here involved, rendered 57 years ago. The question is whether their interests in the land were duly protected in those proceedings under the equitable doctrine of virtual representation.

It is unnecessary to restate all the facts. All that need be remembered is that the common source of title is R, who through a conduit of title, E, quitclaimed the land to his wife, M, remainder to "her bodily heirs by (R) and assigns forever." R died survived by his widow, M, who was life tenant under the deed, and their two minor daughters, who were M's heirs apparent and consequently contingent remaindermen of the fourth class under R's deed, the contingency being whether they survived their mother, M, and became her heirs.

In that legal situation R's bondsman, D, having a claim of $290, brought the subrogation suit in 1890, to be subrogated to the rights of the holder of R.'s sole note and a deed of trust on the land, which R and M had given to secure the note before he executed the quitclaim deed. The petition joined as defendants R's widow, M, life tenant under the quitclaim deed, and her two minor daughters. It alleged the two daughters were her "only bodily heirs." A guardian ad litem was appointed for the two daughters, who filed answer describing himself as *their* representative.

The court's decree for D followed the petition and *found* that the two daughters were "the *only* heirs" of M;[1] rendered judgment against the three defendants for the debt; decreed subrogation; and ordered the issuance of a special execution. The land was sold thereunder to M, the life tenant, for $415.55, or $3.46 per acre, and distribution of proceeds was ordered. The sheriff's deed followed the decree and recited the interests sold were "all right, title, interest and estate" *of M and the two daughters,* naming them. The mother, M, lived until December, 1943. Her two daughters predeceased her leaving five children, two of whom are plaintiffs and three defendants in the instant suit. Consequently they became M's bodily heirs. But they were only contingent remaindermen until their grandmother M died, when their interests vested.

The trial court in connection with its judgment in the instant case filed a written opinion which stated: "It is the opinion of this court that the uncertainty of the persons that would take in remainder by reason of said deed from (E) to (M) vanished at the death of (R) in 1888, and it could then be told who *would* be the bodily heirs of (M) by (R), to-wit: [the two daughters of M by R] ; therefore the judgment and decree of the Circuit Court of Pike County in 1888 against [M and her two daughters] was binding upon the children of [the two daughters] and plaintiff's interests were properly represented by the holder of the first estate of inheritance to the real estate, to-wit: [the two daughters of M]."

The rule followed by the learned trial judge—that the representative of the interests of the unborn must, himself, have an estate of inheritance—has been said to be the general rule.[2] But his opinion erred ▆ in holding M's two daughters had an estate of inheritance in the land. They had only contingent remainders of the fourth class, [dependent on whether they survived M], and such a remainder is not an estate of inheritance.[3] It has been said that strictly speaking a contingent remainder is not an estate at all but merely a chance of having one.[4] It is an *interest* in land,[5] and is alienable, at least by force of our statute.[6] But the fee or reversionary interest in the land remains in the grantor, his heirs, assigns or devisees pending a

---

[1]Italics and parentheses in quotations are mine. References to our statutes are to R. S. 1939, and Mo. R. S. A. unless otherwise indicated.

[2]21 C. J., p. 295, sec. 294; 30 C. J. S., p. 583, sec. 145(3).

[3]21 C. J., p. 917, sec. 7; 31 C. J. S., p. 17, sec. 7; Casteel v. Potter, 176 Mo. 76, 85(2), 75 S. W. 597, 598; Brown v. Fid. Un. Trust Co., 216 N. J. Eq. 406, 436(11), 9 Atl. (2d) 311, 327(16); Bunting v. Speek, 41 Kan. 424, 430, 21 Pac. 288, 290, 3 L. R. A. 690, 693; Smith v. West, 103 Ill. 332, 337(2).

[4]21 C. J., p. 984, sec. 137; 31 C. J. S., p. 91, sec. 72.

[5]McFarland v. Bishop, 282 Mo. 534, 552(6), 222 S. W. 143.

[6]Grimes v. Rush, 355 Mo. 573, 197 S. W. (2d) 310, 311(3).

determination under the original grant of its *vesting* or failing for want of takers as "bodily heirs."[7]

If the unborn heirs of M were virtually represented in D's subrogation case, it must have been by M, the life tenant, or her two minor daughters through their guardian ad litem. But the case was expressly brought, tried and decided on the theory that there were no such outstanding interests to be represented. The guardian ad litem of the two daughters owed his first duty to them, and could not represent the unborn heirs, for D's suit conceded the two daughters had the *whole* remainder. The sheriff's deed did not even purport to convey more than the interests of the *living* defendants. No party defendant in the subrogation suit had an estate of inheritance. The mother, M, had only a life estate; her two daughters had only contingent remainders; and the reversionary interest [in case M died without bodily heirs] was not brought in at all. This necessitates a broader examination of the doctrine of virtual representation.

The doctrine requires the legal position of the actual parties to the suit, or at least some one of them, to be so nearly like that of the unborn persons, that self-interest will prompt the former adequately to represent the latter in representing himself.[8] The rule is born of convenience or necessity, as where the parties are too numerous to be brought in except as a class; or where it is necessary to prevent stagnation of titles and other interests when some of the interested parties cannot be reached. And yet nothing is more repugnant to our jurisprudence than the taking of a man's property without a hearing in court. Hence it is required that he be "virtually" represented by some other interest so like his own that he will be protected, as near as may be.

Sometimes the unknown or unborn interests may be represented by a trustee, executor, administrator, guardian ad litem or an attorney appointed by the court. But when the representation depends only on affinity of interests, the degree of similarity of the respective interests becomes very important. If the interests are not so nearly identical as to assure adequate representation of unknown, unborn or incompetent parties, then they are denied due process. Hansberry v. Lee, supra (marginal note 8). For instance, if the subrogation case 57 years ago had been a partition suit and the interests of the life tenant M and her bodily heirs had been in an undivided share of the land,

---

[7] 23 Am. Jur., p. 532, sec. 72; Mattingly v. Washburn, 355 Mo. 471, 196 S. W. (2d) 624, 626(1).

[8] Restatement, 2 Property, sec. 182, Comment, p. 730; 30 Am. Jur., p. 962, sec. 228; 33 Am. Jur., p. 646, sec. 180; 39 Am. Jur., p. 919, sec. 45, p. 921, sec. 47; Hansberry v. Lee, 311 U. S. 32, 85 L. Ed. 22, 61 S. Ct. 115, 132 A. L. R. 741; Annotation, p. 750(II); Gunnell v. Palmer, 370 Ill. 206, 18 N. E. (2d) 202, 120 A. L. R. 871, Annotation, p. 876; 2 Black on Judgments, sec. 554, p. 840; Freeman on Judgments (5 Ed.), sec. 436, p. 953; 3 Simes, Law of Future Interests, sec. 675, pp. 95-6.

which was set off to them in kind, there would have been (ordinarily) complete harmony of interest.

But here, the plaintiff D in the subrogation case was seeking to and indirectly did foreclose a deed of trust on the land, selling out all underlying interests. If the land sold too cheap it was to the interests of the life tenant M to bid it in, which she did, for $3.46 per acre. True, as the principal opinion holds, she had the right to do that under Souders v. Kitchen, 345 Mo. 977, 137 S. W. (2d) 501. But that means she had the right to act in a manner *hostile* to the interests of her heirs. Bragg v. Ross, 349 Mo. 511, 518, 162 S. W. (2d) 263, 266(2). Neither am I saying that there was any fraud: the evidence does not show what the land was worth. I am speaking only of harmony of interest.

And on the other hand, whatever the land sold for, the way the subrogation suit was brought and decided [that there were no other bodily heirs] the life tenant M and her two minor daughters would get all the surplus to the exclusion of the unborn heirs, who were rightfully entitled to it as matters eventuated. The land did sell for $415.55, whereas D's claim was only $290. What became of the surplus, if any, the record does not show. The effect of the difference between a partition in kind and one by sale is pointed out in two Federal decisions cited below.[9] In my opinion there was not in this case such similarity between the interests of the living defendants and the unborn heirs, as to make the former fair representatives of the latter.

Furthermore, it has been said that the interests of the unknown or unborn parties, if any, must be *considered and protected* in the judgment.[10] This does not necessarily mean the living parties must be designated as representatives of the unborn heirs, but the interests of the latter must be *recognized*. As said in the McClelland case just cited below: "In order for a judgment or decree in a suit to be binding upon others than those who are brought before the court, it should be made to appear from the record in the case that such a result is *contemplated*; that there are persons not before the court having an interest in common with those who sue or defend, and why such others are not brought in; . . . ."

That requirement was wholly ignored in the instant case. The principal opinion holds the trial court was sufficiently advised because the plaintiff's petition alleged that R's quitclaim deed conveyed the land to M "and her bodily heirs by (R) forever." I disagree on that point and think it is the principal issue in the case. It is not the law that a mere descriptive allegation in the petition will cure a jurisdictional

---

[9]McArthur v. Scott, 113 U. S. 340, 401-2, 28 L. Ed. 1015, 1034-5, 5 S. Ct. 652, 673; Pugh v. Frierson, 221 Fed. 513, 524(5).

[10]30 Am. Jur., p. 963, sec. 228; Freeman on Cotenancy & Partition (2 Ed.), sec. 482, p. 641; McClelland v. Rose, 247 Fed. 721, 724(2).

164

defect in the judgment. The petition also alleged there were *no* heirs except the two living daughters, and the court's decree so *found* —holding, in other words, that there were no other interests to be represented and protected.

While the authorities cited in marginal note 10, supra, holding the interests of unborn parties must receive actual consideration, are from other jurisdictions, their doctrine was expressly followed in the Acord case, infra (marginal note 12), which the principal opinion cites. And our statutory and judicial policy always has been to recognize and protect unknown interests. Ever since statehood we have had a statute like the present Sec. 897 down to the first proviso, applicable to civil actions in general, which requires the plaintiff's petition to allege unknown persons, if any, are interested in the litigation, and to describe their interests so far as known. This obviously would cover unknown heirs and "heirs of heirs."[11] A notice by publication to the unknown persons also is required.

Since 1909 the statute has further provided that if the action affects the interests of such unknown persons in the title to any property acquired by deed, will, inheritance, etc., and the unknown parties do not appear, the court *must appoint an attorney to represent them.* And while it may be an idle ceremony to publish a notice to unborn persons; and conceding tentatively that their interests may be protected under the doctrine of virtual representation by qualified persons appearing; still the statute shows their interest must be recognized and brought to the attention of the court.

Sec. 1687, authorizing suits to perfect the ▆▆▆ title to the land, expressly includes unknown heirs, and by reference requires a procedure like that under Sec. 897. Likewise, Sec. 1715 in the Article on partition, provides that if any of the parties or their shares or interests in the land be unknown to the plaintiff, or if their interests be unknown, uncertain or contingent, the same shall be stated in the petition. Sec. 1710 in the same Article, and mentioned in the principal opinion here, permits the holder of a particular estate of present enjoyment in land to sue in equity to have the land sold, whenever such particular interest is rendered burdensome and unprofitable by uncertain or contingent future interests. And while Sec. 1711, next following, provides the doctrine of virtual representation shall apply to unborn persons in such cases, yet it further provides that when such future interests may vest in an unborn person *not representable* by living persons in the same class or related interest, *a disinterested attorney shall be appointed to represent the unborn person.* All the foregoing, under the several statutes mentioned, shows the interests of the unborn persons must be pleaded and considered.

[11]43 Words & Phrases (Perm. Ed.), pp. 274-5.

That was done in all of the decisions cited in the principal opinion and below.[12] The *Reinders* case was a partition suit. The petition alleged the life tenant had "ostensible" (presumptive) heirs, and the appeal was from an overruled demurrer to the petition, which challenged the plaintiff's right to maintain partition until the contingent remainders had vested. The rights of the unknown heirs were squarely raised. The *Sikemeier* suit was the same. In fact the petition there prayed that the rights of the contingent remaindermen be *ascertained and determined*. The *Sparks* case was an ejectment suit turning on the validity of a prior partition suit brought by a single woman who was life tenant of an undivided fourth interest in land, remainder to her heirs. The court ordered her share set off to her *and her heirs*. But it was found the land could not be divided in kind, and it was then ordered sold, her share of the proceeds being allotted to her "and her heirs." In the meantime the plaintiff had married and had a child, for whom a guardian ad litem was appointed. It will be seen the interests of the unborn heirs were sedulously protected throughout the litigation.

The *Acord* case, already mentioned, was an ejectment suit challenging a prior voluntary partition in kind by deeds, of land held jointly by five life tenants, remainders severally to their respective heirs. After the death of one of these life tenants his sole heir and vested remainderman brought the ejectment suit. The opinion held she was virtually represented by her parent in the partition in kind, but quoted from Freeman on Cotenancy & Partition (2 Ed.) Sec. 482, cited supra in marginal note 10, as follows:

"But in order to bind the interests of persons not in esse the proceeding must be adapted to that purpose. *If no mention is made of such interests, and the pleadings and judgment are founded upon the theory that the persons in being before the court are the only persons having any estates or interests in the property,* then no interests are affected except those vested in the parties before the court. Whenever it is sought to bind the interests of persons not then in being, *the judgment must be one which 'provides for and protects such interests* by substituting the fund derived from the sale of this land in place of the land, and preserving it to the extent necessary to satisfy such interests as they arise.'"

The opinion in this Acord case went on to point out that in the mutual partition deed there involved, the rights of the parties not in esse *were recited*. Note the difference between that case and this—

[12]Reinders v. Koppelmann, 68 Mo. 482, 483, 501, 30 Am. Rep. 802; Sikemeier v. Galvin, 124 Mo. 367, 370-1, 27 S. W. 551; Sparks v. Clay, 185 Mo. 393, 400, 406-8, 84 S. W. 40, 41, 43-4; Acord v. Beaty, 244 Mo. 126, 130-136, 148 S. W. 901, 904; Edwards v. Harrison (Mo. Div. 1), 236 S. W. 328, 331(2); White v. Campbell, 316 Mo. 949, 950-1, 292 S. W. 51; Jackson v. Miller, 288 Mo. 232, 238-40(2), 232 S. W. 104(1).

where both the petition and *judgment* in the subrogation case affirmatively declared there *were no other heirs.*

The *Edwards* case, which the instant principal opinion stresses, was an action for the specific performance of a contract for the sale of land, which turned on the validity of a prior action to determine title. The title involved the construction of a will, which had devised land to a trustee for the use and benefit of the testator's daughter for life, and at her death the land was to be conveyed by the trustee to the bodily heirs of the daughter, or in default of such then to the testator's other heirs. The daughter brought the title action joining as defendants, all the testator's children (but not their children) together with her own two children and the testamentary trustee. She obtained a decree vesting a fee simple title in her. It was contended in the later specific performance suit that the decree in the prior title suit was not binding on the unborn contingent remaindermen (either her descendants or her father's). But this court's decision pointed out that all such interests were represented by the *testamentary trustee,* who was a party to the suit and charged by the will with the duty of making the conveyance of the remainder interests to the parties eventually entitled thereto.

In the *White* and *Jackson* cases, chiefly relied on by the principal opinion, the suit was to *set aside a deed in toto.* The interests of all the contingent remaindermen were in fact identical: if the plaintiff won both the living and unborn must lose. But more important, in both cases the living contingent remaindermen were expressly sued as a *class* with the unborn, thereby putting the interests of the latter directly in the litigation.

On the other hand, in the subrogation case here involved the plaintiff D *brought* his suit on the theory that the mother, M, and her then living two minor daughters were the only persons interested in the land—evidently on the assumption that they would outlive her. His petition alleged they were her only heirs; that was the theory of trial; the decree so found; and the sheriff's deed pursuant thereto did not attempt to convey more than the interests of those three defendants. To say the word ''heirs'' meant ''children'' would only worsen matters, for it would imply the interests of M's after-born sole heirs were consciously ignored. We are not concerned here with some instrument crudely drawn by a layman, but with formal court proceedings which involved the legalistic phrase M's ''bodily heirs (by R) and assigns forever,'' used in R's deed. This put everyone on notice as to the technical intent. Nevertheless, the instant principal opinion holds the after-born sole heirs were bound by the proceeding. But in the foregoing circumstances how can it be said they were represented? If they were accorded due process I am unable to see it.

Other decisions in harmony herewith are cited and discussed in the instant dissenting opinion of Hyde, J. and the opinion of Bohling,

C., quoted therein, particularly the Heady and McConnell cases cited below.[13] The facts in both resembled those here nearly enough to make their rulings apposite. They held, in substance, that where the ultimate contingent remaindermen in whom title vests, take by purchase in their own right (as in this case), and not by inheritance from a party to the suit—in other words, where there is no privity of title—the doctrine of virtual representation ought not to apply, except in case of necessity. Both decisions further held, in effect, that in any such instance where the rights of the unborn may be affected prejudicially, the court should look into the merits and protect their rights; and both did do that.

The only discussion in this State, so far as can be found, bearing on the necessity of impleading defendants both personally and as representatives of unknown or unborn interests under the doctrine of virtual representations, is in a Note in 2 Mo. Bar Journal, p. 11, written in 1931. It criticized the Heady and McConnell cases, last cited, and commended the White and Jackson cases. But it called attention to the fact that in both those cases the living contingent remaindermen were made defendants in their own right and as representatives of the unborn; and said the same was "probably" true in the Reinders and Sparks cases. However, it pointed out that in the Edwards case some of the living contingent remaindermen were not joined as defendants, but that the court neverthless held the omission was not fatal because these contingent remaindermen were represented by the testamentary trustee. The conclusion of the annotator was that "*prudent* counsel will join all persons in being or who may possibly succeed to the contingent interests . . ."

It is not unfamiliar doctrine that a testamentary trustee represents the unborn who may have a future contingent interest in his trust. Garrison v. Garrison, 354 Mo. 62, 66-7 (1), 188 S. W. (2d) 644, 645(1). And the writer has no disposition to unsettle titles based on judgments or decrees arrived at under the doctrine of virtual representation. But to say that the doctrine applies in a case where the plaintiff alleged there were no interests to be thus represented, and the court so found, seems to me to be going too far.

HYDE, J. (dissenting)—I cannot concur in the majority opinion herein. The opinion proceeds on the theory that it makes no difference that there were no allegations in the petition in the 1890 suit to show that the living children of the life tenant were made parties as representing the whole class of bodily heirs, as well as in their own right as presumptive bodily heirs, as was true in both of the cases cited as authority for affirming the judgment herein, namely: Jackson v.

---

[13]Heady v. Crouse, 203 Mo. 100, 119(II), 100 S. W. 1052, 1057, 1071(3); McConnell v. Deal, 296 Mo. 275, 290-6(II-IV) (4), 246 S. W. 594, 596-8 (1-3).

Miller, 288 Mo. 232, 232 S. W. 104; White v. Campbell, 316 Mo. 949, 292 S. W. 51.

I think the failure of the petition in this respect makes just as much difference as would the failure to make a living person (with an interest) a party to such a suit. The purpose of requiring such allegations to be made is to give notice that the suit is intended to affect such interests. How can they be forclosed without any notice in the petition that they are to be affected and without any provisions of the decree even purporting to affect them? One cannot sue a defendant individually only and then claim that the judgment affects him in some capacity as trustee, executor or guardian when there has been no intimation either in pleadings or judgment that any rights in a representative capacity were to be affected. I do not see how the doctrine of virtual representation can apply when it is not invoked.

I think it is clear that the 1890 suit proceeded upon a theory exactly the opposite of virtual representation, because it proceeded on the theory that everyone who had an interest was in court and that there were no other interests involved. The petition alleged (and the decree found) that the two daughters of the life tenant (named as defendants) were the only bodily heirs of the life tenant. This was not true then and never became true, but there was no suggestion in the petition that relief was sought against anyone other than the named defendants and there is likewise no provision in the decree showing any intention to affect any other interests. Thus we have a case which is completely different from Jackson v. Miller, supra, and White v. Campbell, supra, relied upon in the opinion. I think they are the strongest kind of authority against the result reached by the opinion herein, because they clearly show that it is necessary to recognize and describe the interests sought to be reached in order to give the court any authority to affect the interests of any unknown or unborn contingent remaindermen who may be the ultimate takers of the estate created by such a deed; and how to invoke the doctrine of virtual representation so that they will be bound by a present suit.

It begs the question to argue that the kind of suit used here must be upheld because living parties are entitled to have their rights adjudicated immediately without waiting for the time when the ultimate takers are made certain by the death of the life tenant. Of course, they are entitled to an immediate adjudication but they are not entitled to have it without due process of law. Therefore, they are not entitled to have it without stating fully in the petition the interests they seek to affect and describing the persons who will own such interests so they may be adequately represented and protected by the court as the circumstances may require Nor can such interests be affected (in my view) by a decree which does not even recognize that there could be such persons and does not purport to affect the interests of anyone except the three named living defendants. It

must not be overlooked that plaintiffs take as purchasers from the original grantor and not by inheritance from anyone. I think that the opinion of Bohling, C. in Division No. 2, correctly applies the controlling legal principles, and I adopt the same as part of my dissenting opinion, as follows:

■ *Missouri Statutes on Foreclosure.* The Federal and State constitutional provisions guaranteeing against the deprivation of property without due process of law most generally preclude depriving citizens of rights in property without their consent in the absence of a judgment of a competent court having jurisdiction and power and affording the citizen an opportunity to appear and be heard. (U. S. Const., Amends., V, XIV; Mo. Const., 1875, Art. II, Sec. 30.) In conformity, the owner of the equity of redemption is a proper and, in some jurisdictions, a necessary or indispensable party to any court proceeding having the object of foreclosing the equity of redemption, the judgment being conclusive on the persons joined but a nullity as to the equity of redemption of those not a party.[1] This is the announced law of Missouri. R. S. 1939, Secs. 3447 and 3460, the latter (Sec. 7089, R. S. 1889 derived from Laws 1845, p. 751, Sec. 16) providing that purchasers under executions in the article treating of "Mortgages and Deeds of Trust" (Ch. 23, Art. 2), ". . . shall not be permitted to set it (his title) up against the subsisting equities of those who are not parties thereto." See Hull v. Lyon (1858), 27 Mo. 570, 576; McCauley v. Brady (1907), 123 Mo. App. 558, 100 S. W. 541; Coffin v. Damon (1940, Mo. App.), 139 S. W. (2d) 563, 564(1). The judgment of 1890 was rendered in a suit to reinstate and revive a satisified and released deed of trust, to subrogate the plaintiff, a stranger to the title, to the rights of the owner of the deed of trust, and to sell the land under the authority of the deed of trust to defeat the title of those acquiring the equity of redemption subsequent to the execution of said deed of trust. We think this could have been accomplished; but for some reason (perhaps plaintiff thought the life interest and a chance at the fee would satisfy his debt) no person holding the inheritance was sued as such nor was any effort made to bring the interests of any possible unknown or unborn person before the court. Consequently, only the equity of redemption of the life tenant, Maria A., and the chance of Maggie and Carrie Roberts acquiring title upon qualifying as Maria A.'s "bodily heirs by Jo H. Roberts" on the death of Maria A. was foreclosed. The title thus acquired can be set up "against the parties" to that suit but under the words of Sec. 3460 that title cannot be set up against the equities of others not parties to that suit.

[1] 42 C. J. 47, Secs. 1562, 1566, 1576, 1777, 1782; 37 Am. Jur. 44, Secs. 584, nn. 8, 9; 550, 1121.

170

■ *The general situation.* We think that absent these statutory provisions the result would have to be the same. Respondents, without discussing the effect of the Missouri statutes mentioned in the last paragraph, seek the application of the doctrine of virtual representation,[2] one of the situations in which class actions are permitted, citing as authority 34 C. J. 1000, Sec. 1421, and the four cases next mentioned, which, insofar as they bear on the instant issue, proceeded on the theory a class action was involved. Consult Restatement of the Law, Judgments, p. 563, Sec. 116; p. 426, Sec. 86, h; p. 428, Sec. 87.

White v. Campbell (Div. II, 1927), 316 Mo. 949, 951(I), 292 S. W. 51(I), sought enforcement of the payment of a balance due on a land purchase contract, the issue being the vendor's "good, merchantable" title according to the contract. The vendor ■■■ acquired the land upon the distribution of his father's estate. The father also had executed a deed conveying the land to the vendor for life, "with remainder to the heirs of his body." This deed had always remained in the father's possession, had never been delivered, but his executors had it recorded. The son, to quiet his title, *sued his brothers and sisters and his children,* his petition alleging he sued each *individually and as representatives of the class to which they belonged, especially* his children, *as representatives of any "unborn children"* of the grantee in tail. He brought the inheritance before the court. The court considered the decree cancelling the deed and quieting the title in the son binding on any children of the son thereafter born.

Jackson v. Miller (Div. I, 1921), 288 Mo. 232, 233, 232 S. W. 104, was to cancel two deeds. Plaintiff, a widow in moderate circumstances, soon after widowhood deeded land to her sister's husband, upon his advice, and he immediately deeded the property back to her for life with remainder to the heirs of her body. Plaintiff had left the entire transaction to her said brother-in-law. Upon definitely learning of the estate thus created, *she sued* the brother-in-law, *her sister and her children* to cancel both deeds; *suing the children* as individuals " ' *and also as representing the whole class of the "heirs of the body"*.' " of plaintiff. (Italics ours.) The court set aside the deeds.

In King v. Theis (Div. I, 1917), 272 Mo. 416, 422, 199 S. W. 183, 184(3), the plaintiffs were actual parties to the two previous suits— one in partition, the other to quiet title (Sec. 2092, R. S. 1889) in which Theis' predecessor in title prevailed. The facts take it out of the instant issue.

[2]See 30 C. J. S. 577, Equity, Sec. 145; 21 C. J. 295, Equity, Sec. 294; 34 C. J. 1000, Judgments, Secs. 1421, 1471; 42 C. J. 48; Mortgages, Sec. 1565; 30 Am. Jur. 962, Judgments, Sec. 228; 33 Am. Jur. 645, Life Estates, Remainders, etc., Secs. 179-183; 37 Am. Jur. 51, Mortgages, Sec. 557; 39 Am. Jur. 917, Parties, Secs. 44-55; 2 Restatement, Law of Property, 735, Sec. 183; Annotations: 132 A. L. R. 749; 120 A. L. R. 876, (884); 42 L. R. A. (N. S.) 430; 8 L. R. A. (N. S.) 4; 97 Am. St. Rep. 762; 34 Am. Dec, 363; 72 Am. Dec. 455; 69 A. L. R. 924; Ann. Cas. 1918C, p. 654.

Souders v. Kitchen (Div. I, 1940), 345 Mo. 977, 137 S. W. (2d) 501, did not involve representation. It held a remainderman may lose his rights, for instance, by laches or adverse possession, in the event the life tenant acquire the land under an outstanding paramount incumbrance and the remainderman fail to contribute his just portion of the price within a reasonable time or within the limitation period. The court had before it vested remainders, subject to a husband's curtesy; not remainders contingent as to the person who might take as in the instant case. The application of that rule here begs the instant issue, for unless we determine that the equity of redemption first acquired on Maria A.'s death in 1943 by the grandchildren was sold under the judgment of 1890, there would be no occasion for contribution on their part.

In Edwards v. Harrison (Mo. Div. I, 1921), 236 S. W. 328, 330, 331(2), all interested parties, whether *in esse* or not, were considered to have been before the court in the earlier case; those not in esse, if not otherwise represented, by a testamentary trustee, who held the legal title for all such interested devisees, and that judgment was held invulnerable to collateral attack. Jackson v. Miller, supra, was considered authority and in harmony. Trustees, however, respresent the trust estate in many matters and may sue and be sued with respect thereto (54 Am. Jur. p. 453, Sec. 585, nn 18, 19); a difference justifying a distinction in some instances. The facts differ from the instant case.

This line of cases in Missouri heads from Reinders v. Koppelmann (1878), 68 Mo. 482, 501, 30 Am. Rep. 802, followed in Sparks v. Clay (Div. I, 1904), 185 Mo. 393, 408, 84 S. W. 40, 44; Acord v. Beaty (Div. II, 1912), 244 Mo. 126, 131(II), 148 S. W. 901, 903(2), 41 L. R. A. (N. S.) 400. They may be traced to English cases. Reinders v. Koppelmann and Sparks v. Clay were in partition, instituted during the life tenant's tenure. They involved contingent remainders passing to "heirs." The court held partition would lie notwithstanding the existence of the interest contingent upon who might eventually qualify as "heirs" of the named person. Reinders v. Koppelmann stressed English cases decided in 1801 (Wills v. Stade, 6 Ves. Ch. 498) and 1836 (Gaskell v. Gaskell, 6 Sim. Ch. 643). These and other English cases do not prevail over public policy declared in Federal and State constitutional and statutory enactments. Consult State ex rel. v. Beck (Banc), 337 Mo. 839, 846, 85 S. W. (2d) 1026, 1029; Sec. 645, R. S. 1939. Estates tail originated under the English Statute De Donis Conditionalibus of 1285 (Stat. West. II, 13 Edw. I, c. 1), enacted for the purpose of carrying out the expressed intent of the donor or grantor. It was to the effect that grants to one and the heirs of his body vested no power in the donee to alien or defeat the grant but that the land, at the death of the donee, passed to his issue (children, grandchildren and more remote descendants) so long as his

posterity endured, and reverted to the donor or his heirs on the failure of such posterity. Numerous objections existed to this type of an estate precluding alienation but it was many years before they commenced to be unfettered. See Taltarum's case (1473), Y. B. 12 Edw. IV, pl. 19; 31 C. J. S. 37, Sec. 27. In time they became so reduced in England as to approximate even before issue born, the conditional fee (under which the donee might alien the fee upon the birth of issue) which they supplanted. 2 Blackstone *109 et seq.; 2 Minor's Institutes 77 et seq.; 1 Coke on Littleton (19th Ed. 1853) 19a et seq. The tenants in tail could defeat the future interests of estates tail if they chose to take the proper legal steps. There was little if anything for the heirs in tail to protect if parties to the proceeding. Hence, it was considered proper for the tenant in tail to represent the future interests. The rule in Shelley's case[3] (1581—holding in a grant of freehold to one and remainder to his heirs, in fee or in tail, "heirs" was a word of limitation and not of purchase) had its influence. This rule was discarded early as law in Missouri.[4] Fundamental distinctions exist between the English and Missouri law in that the rule in Shelley's case is not the law of Missouri; that Missouri statutes recognized estates tail for one generation—one lifetime; and that the heirs and heirs of the body in an estate tail in Missouri take as purchasers.

Reinders v. Koppelmann, Sparks v. Clay and Acord v. Beaty have been said to stand overruled. We need not develop this feature here.[5]

The issue is: Were the rights of the unborn contingent remaindermen of the fourth class docked by the proceedings resulting in the judgment of 1890? The question is not could their rights be affected but

---

[3](1581), 1 Coke's Rep. *93a (227). Abolished in England by Law of Property Act 1925, Sec. 131. See 29 A. L. R. (N. S.) 963.

[4]R. S. 1825, p. 794, Sec. 18; R. S. 1835, p. 620, Sec. 28; R. S. 1845, p. 220, c. 32, Sec. 7; Riggins v. McClellan (1859), 28 Mo. 23, 29-30; Tesson v. Newman (1876), 62 Mo. 198.

[5]Gibson v. Gibson (Div. II, 1920), 280 Mo. 519, 530, 219 S. W. 561, 564 (citing cases from both divisions) stated Reinders v. Koppelmann and Sparks v. Clay, among others, "are now expressly overruled, insofar as they conflict with the holdings of this court in Hill v. Hill (Div. II, 1914), 261 Mo. 55, 168 S. W. 1165) and in this case." Dodd v. McGee (Mo. Div. I, 1945), 354 Mo. 644, 190 S. W. (2d) 231, held land devised to a widow for life and then to the daughter "and the heirs of her body" could not be partitioned by the daughter and the heirs expectant against the widow and stated Acord v. Beaty and other cases had been overruled on that issue. Some have said the ruling in Gibson v. Gibson should be restricted to the effect that a devisee may not force partition of land against the expressed wish of his testator. Statutory enactments so provide. Section 1721, R. S. 1939; which was Sec. 47, p. 973, Wagner Stat. 1870. That is not the instant issue. But restricting the overruling of the cases mentioned to holdings conflicting with expressed testamentary intent is too narrow, because the instrument involved in Sparks v. Clay and the instrument involved in Acord v. Beaty, to mention two cases were deeds and could not involve testamentary intent.

were their rights affected. We think they were not affected on at least two additional grounds, viz.:

1st. The bill in the suit of 1890 did not set out the interests of the contingent remaindermen not *in esse.*

2nd. The judgment did not provide for and protect the interests of the contingent remaindermen not *in esse.*

Most cases on this issue involve remainders to a class, such as children, nephews et cetera, immediately vesting in all members of the class in existence and opening up to admit the unborn as they come *in esse.* Those in existence hold the title to the whole subject to being cut down by the birth of others of the class. No member of the class acquiring title as purchasers of the fee was before the court in 1890.

We have held that judicial proceedings and a judgment against only the life tenant ▮▮▮▮ for delinquent taxes (a lien against all interests) and a sale under such judgment does not divest the interests of the remaindermen, they not being before the court. Falvey v. Hicks, 315 Mo. 442, 450 (III), 286 S. W. 385, 388(4) citing cases; Bradley v. Goff, 243 Mo. 95, 147 S. W. 1012.

The only mention we find that perhaps the interests of the unborn need not be disclosed and their interests protected by parties joined or otherwise brought in through appropriate allegations in the pleadings (although considered the more prudent practice) is a brief article in 2 Mo. Bar Journal, p. 11. The article recognized that Reinders v. Koppelmann, Sparks v. Clay, and Acord v. Beaty, supra, announced the rule in Missouri but overlooked that the reasoning justifying the holding was our statute requiring the pleader to state in the petition the interests of those unknown, or uncertain, or contingent, viz.: "The requisition of such statement implies that the facts so stated shall constitute no bar to a partition." 68 Mo. 1. c. 502, being the portion quoted in Sparks v. Clay, 185 Mo. 1. c. 409, 84 S. W. 1. c. 44. And Acord v. Beaty quotes as good law from Freeman on Cotenancy & Partition (2nd Ed.), Sec. 482, the following: "But in order to bind the interests of persons not *in esse* the proceedings must be adapted to that purpose. If no mention is made of such interests, and the pleadings and judgment are founded upon the theory that the persons in being before the court are the only persons having any estates or interests in the property, then no interests are affected except those vested in the parties before the court. Whenever it is sought to bind the interests of persons not then in being, the judgment must be one which 'provides for and protects such interests by substituting the fund derived from the sale of this land in place of the land, and preserving it to the extent necessary to satisfy such interests as they arise.' " 244 Mo. 126, 135, 148 S. W. 901, 904.

"Where the suit is brought by or against a few persons in a representative capacity, that fact must be alleged of record . . . and in the absence of such an averment the rights of the other members

174

of the class sought to be represented will not be affected by the proceedings." 30 C. J. S. p. 579, Sec. 145, nn 85, 87. Consult also Id., Sec. 145 b, (3). McClelland v. Rose, 247 Fed. 721, 724, Ann. Cas. 1918C, 341. In order to bring a suit by or against parties as a class suit or as representatives of a class and have the judgment "binding upon others than those who are brought before the court, it should be made to appear from the record in the case that such a result is contemplated; that is, the suit must be brought as a representative or class suit." 39 Am. Jur. p. 926, Parties, Sec. 53, nn 18, 19. See Id., Sec. 51, nn 12 et seq.

"The bill or complaint should clearly and specifically set out the interests of all the parties including those of the remaindermen not *in esse*, and the contingent interests represented should be provided for and protected by the decree, unless it determines that there is no interest." 1 Freeman on Judgments, p. 1059, Sec. 490, nn 19, 20. See 2 Black on Judgments, p. 1005, Sec. 661, nn. 987, 988.

"It seems to be an indispensable requirement that the adjudication, in order to bind the interests of the unborn contingent remaindermen, should recognize their interests and provide for their protection in the judgment or decree. . . . The doctrine of virtual representation will not be extended . . . to persons not yet born whose interests are not considered by the court in entering judgment." See Id., p. 748, Sec. 265, nn. 16, 17. To the same effect: 30 Am. Jur. p. 963, Judgments, Sec. 228, nn 19-2.

Section 183 of Vol. 2, Restatement of the Law of Property, insofar as material here, reads:

"A person unborn at the time of the commencement of a judicial proceeding is duly represented therein by a person duly joined as a party thereto, when

"a. . . . ; and

"b. The judgment, decree or other result of such proceeding operates with equal regard for the possible interests of the person joined as a party and of the unborn person; and

"c. . . . ."

Our attention has not been directed to the statement of a rule with respect to the ▮▮▮ pleadings in that work; but from the requirement that the judgment protect the interest of the unborn the issue should be within the pleadings that it be presented for adjudication.

▮▮ The bill culminating in the judgment of 1890 was styled "Walker Davis, plaintiff, vs. Marie A. Roberts, Maggie Roberts and Carrie Roberts, defendants." The defendants were sued as individuals and not as representatives of a class. There was no plea of any necessity. The bill specifically alleged, after mentioning "defendant Maria A. Roberts"; "That the other defendants herein are the only bodily heirs of said Maria A. Roberts." The suit did not proceed on the theory any defendant or defendants represented the class of Maria

A. Roberts' "bodily heirs by Jo H. Roberts." Finding that $290 of the funds of Elizabeth J. Roberts' estate had been wrongfully used by Joseph H. Roberts to discharge his deed of trust against the land, the judgment undertook to subrogate Walker Davis to the rights of the holder of said deed of trust to that extent, necessarily reviving and reinstating a deed of trust that stood satisfied and released of record. There was no effort in the title or the body of the bill to make the decree affect the rights of any possible unborn "bodily heir" of the tenant in tail or any possible reversionary interest in Elizabeth J. Roberts and her heirs or assigns. As to be expected, there was no effort in the judgment to protect such possible interests. In fact they were not mentioned. Witness the Sheriff's deed, which conformed to the proceedings had: It recites, so far as material, that the judgment was in favor of Walker Davis and against "Maria Roberts, Maggie Roberts and Carrie Roberts" for $290; that a special execution issued thereunder and by virtue thereof he did "levy upon and seize all the right, title, interest and estate of said Maria Roberts, Maggie Roberts and Carrie Roberts" in the real estate that he gave notice he would expose for sale at public auction "all the right, title, interest and estate of said Maria Roberts, Maggie and Carrie Roberts" in the real estate; and that he sold to the purchaser, Maria Roberts, "all the right, title, interest and estate of the said Maria Roberts, Maggie Roberts and Carrie Roberts" in said real estate. The proceedings did not purport to affect any interests of any unknown or unborn person. This, no doubt, because the judgment found: "That the other defendants herein (referring to Maggie and Carrie Roberts) are the only bodily heirs of said Maria A. Roberts . . . "; which was not and is not claimed now to be the fact. Under the facts involved, the decree should have directed, first, the sale of the interests of the life tenant, cosigner on the deed of trust, which might have been sufficient to discharge the judgment. The judgment did not do this. Nor did it attempt to preserve any surplus from the sale of the land for those who might eventually qualify as the "bodily heirs." The proceedings, from plaintiff's petition to the sheriff's deed moved solely against the estate of the then defendants (Maria A., Maggie and Carrie Roberts) in the land. It may be in Davis v. Roberts that the interests of Maria A., Maggie and Carrie coincided with the interests of the appellants to defeat Davis' suit. But, if proceedings of that particular nature otherwise be in due accord with law, once the suit was determined in favor of Davis, the interests of the living and the interests of the unborn became antagonistic, in that, for instance, it was then to the advantage of the living to acquire the land at the sale under the judgment freed from all claims of the unborn and to purchase it as cheaply as possible while discharging the obligation due Davis (something easily accomplished in the absence of opposition as a practical proposition whenever desired), whereas it would be to the in-

terests of the unborn, not present and unable to protect their interests by bidding, to have the real estate bring the highest possible price and the court administer any surplus for their protection until distributed according to law upon the death of Maria A.

Generally some member of the class acts as representative of the class in class actions. Maria A. was a life tenant. Maggie and Carrie had a mere chance to acquire the fee. No member of the appellants' class, "purchasers of the fee," was before the court in Davis v. Roberts. The plaintiff Davis should not be allowed to select non-members of the class to represent appellants. It would be better practice for the court to appoint a guardian ad litem or some other fiduciary that the unborn receive adequate representation throughout, not merely at the trial, when duly apprised of the situation by the pleadings.

Respondents' cases do not rule the issue. They were class actions and were so considered by the court. Generally judgments outside the issues presented by the pleadings are of no force and effect. We perceive of no sound reason justifying a holding that unborn non-parties, who are powerless to protect their rights, are bound by a judgment while holding all nonparties in being, who could protect their rights if made parties, are not bound where the action is not a class action. Judgments failing to protect the rights of those not *in esse* as the judgment in Davis v. Roberts failed to do, have been held a nullity with respect thereto. Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815; Monarque v. Monarque, 80 N. Y. 320, 326; Barnes v. Barnard, 77 Hun, 234, 28 N. Y. S. 400; Des Champs v. Mims, 148 S. C. 52, 145 S. E. 623, 626(3); Wilder v. Cox (Tex. Civ. App.), 104 S. W. (2d) 897, 900(5); Annotation, 97 Am. St. Rep. 766(IV). Missouri courts have due regard for the true intent and meaning of testators (Sec. 568, R. S. 1939) and of grantors in deeds (Norman v. Horton, 344 Mo. 290, 296 (3), 126 S. W. (2d) 187, 190(4, 5), 126 A. L. R. 531). Estates tail are sanctioned in Missouri for one generation. They are entitled to protection to that extent.

Maggie and Carrie, the children who as individuals were parties to the litigation of·1890, had died before respondents purchased from Maria A. Respondents knew said Maggie and Carrie never had been and never could be Maria A.'s "bodily heirs by Jo H. Roberts." *Nemo est haeres viventis.*

This conclusion is well within the reasoning and the holdings of the following cases:

In Boone v. Oetting (Div. I, 1938), 342 Mo. 269, 273(3), 114 S. W. (2d) 981, 983(5), a father devised land to a daughter "and her bodily heirs." She and three minor children (one thereafter becoming the mother of John A. Erdwins), by curators, instituted partition against her other children. She purchased the land at the partition sale. Erdwins' mother received her part of the proceeds but she pre-

deceased the tenant for life. The holding that as to John A. Erdwins "defendant Oetting owned only the life estate of the mother" recognizes that unauthorized acts of parents later predeceasing the life tenant are ineffectual to defeat the title accruing to their children who later qualify as the heirs in tail.

In Heady v. Crouse (Banc, 1906), 203 Mo. 100, 119 (II), 100 S. W. 1052, 1057, 120 Am. St. Rep. 643, an action in ejectment, testator had devised land to his widow "Jane S. Shelton for life, remainder to the heirs of her body." The widow married Joseph M. Heady and had six children—Mary, Charles, Laura, Sarah, Annie, and Joseph. Mr. and Mrs. Heady instituted a proceeding against their six children (all minors at the time except Mary) wherein a judgment was entered in 1871 authorizing the sale of the land upon a finding " 'that it will conduce to the interest of the defendants, who are the heirs of the body of said Jane S. Shelton, now Jane S. Heady, to sell the said real estate and to invest it in other real estate more productive and beneficial to said defendants.' " The land was then sold. The record does not disclose any order with respect to the reinvestment of the proceeds. Mary married, had two children and predeceased her mother. Laura married, had three children and predeceased her mother. Jane S. (widow and mother aforesaid) died in 1900. Then so far as material to the instant issue, the children of Mary and Laura (grandchildren of Jane S., the tenant in tail), were parties to the ejectment suit against the successor in title of the purchaser under the judgment of 1871; and court en Banc, in speaking specifically to the rights of said grandchildren and holding said judgment of 1871 not binding, said: "These latter were not bound by the decree, even if the others had been, because they derived their title, not by inheritance from their mother in whom no title ever vested, but directly from the will as being heirs of the body of their grandmother."

In the later case of McConnell v. Deal (Banc, 1922), 296 Mo. 275, 290 (II, IV, VI), 246 S. W. 594, 595(2), 597(3, 5), involving ■ a grant from Rebecca E. Botts to Sarah F. Deal and " 'the heirs of her body,' " the grantor reserving a life estate, and a suit by Mrs. Botts and Mrs. Deal against four children of Mrs. Deal, "as the living heirs of her body and also as a class representing such heirs of her body as may thereafter come into existence," court en Banc, after reviewing the cases, reached the same result as in Heady v. Crouse, supra, and upon like reasoning. The fact that collusion existed in the first case afforded an additional reason for the holding; note the introductory word, "moreover," to that portion of the opinion.

Consult Haile v. Hill, 13 Mo. 612; Allen v. DeGroodt, 98 Mo. 159, 162(II), 11 S. W. 240(2), 14 Am. St. Rep. 626; Buckner v. Buckner, 255 Mo. 371, 164 S. W. 513; Matthews v. Van Cleve, 282 Mo. 19 221 S. W. 34; Lewis v. Lewis, 345 Mo. 816, 827(5), 136 S. W. (2d) 66, 71(10). The reasoning in Stockwell v Stockwell (Div. I, 1914), 262

Mo. 671, 674 (I, IV), 172 S. W. 23 (I, IV), which contains a good discussion of estates tail in Missouri, is in accord.

A deed by the life tenant and an heir expectant of an estate tail who thereafter predeceases the life tenant does not dock the title of the "heirs of the body." Nichols v. Robinson (Mo. Div. I, 1919), 211 S. W. 14; Emerson v. Hughes (Div. I, 1942), 110 Mo. 627, 19 S. W. 980; Clark v. Sires (Div. I, 1906), 193 Mo. 502, 92 S. W. 224. Heirs expectant under an estate tail may not maintain trespass for injury to the estate during the life of the tenant in tail. Stigers v. St. Joseph (Div. I, 1942), 166 S. W. (2d) 523, 528 (6).

We have not overlooked the comment in White v. Campbell, 316 Mo. 949, 292 S. W. 51, by Division Two of this court under Point II therein on the Banc cases of Heady v. Crouse, by a unanimous court, and McConnell v. Deal, five of the seven judges concurring on the issue. White v. Campbell relied on cases like Sparks v. Clay, at that time clearly overruled on the underlying issue sustaining the right to partition, and Acord v. Beaty, thereafter likewise overruled; and characterized observations of court en Banc as dictum without analyzing or developing the issue or the reasoning of court en Banc. The true ground for permitting a judgment to affect the rights of persons not *in esse* may well rest in the exigencies of a given situation as observed in McConnell v. Deal, 296 Mo. l. c. 296 (IV), 246 S. W. l. c. 597 (3). See Young v. Hyde (Div. I, 1914), 255 Mo. 496, 510, 164 S. W. 228, 232 (4). The statement harmonizes with the doctrine of virtual representation as generally announced. Where the party seeking relief conceives of no necessity for bringing in the unborn, the nonnecessity should be taken as admitted.

■ *Privity.* Appellants were not privies to the parties defendant in Walker Davis v. Maria A. Roberts et al. They do not take title by representation through their grandmother or through their respective mothers nor do they succeed to the rights of either. Their mothers never had title. They take, according to our statutes, as purchasers in fee simple, as grantees under the deed of Elizabeth J. Roberts to Maria A. Roberts "and her bodily heirs by Jo H. Roberts" as surely as if the fee had been granted to them by name. See McConnell v. Deal (Banc), 296 Mo. 275, 296 (IV), 246 S. W. 594, 597 (4) (stating: "There could be no privity"); Dillard v. Owens (Mo. App.), 122 S. W. (2d) 76, 82 (9-11); 2 Black on Judgments (2d Ed.), Sec. 594. Respondents' cases to the point (Summet v. City Realty & B. Co., 208 Mo. 501, 510 (1), 106 S. W. 614, 616 (I); Crispen v. Hannavan, 50 Mo. 415, 419), are on different facts.

I think the judgment should be reversed and the cause remanded with directions to determine the rights and title of the parties in accordance with the views herein expressed.